**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**

| | |
|---|---|
| **EXACT SCIENCES CORPORATION, *et al.*,** | **Case No. 3:16-CV-58-JHM** |
| **Plaintiffs,** | **Judge Joseph H. McKinley, Jr.** |
| **vs.** | **Magistrate Judge Dave Whalin** |
| **HUMANA INC.** | **MOTION TO DISMISS** |
| **Defendant.** | |

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendant Humana Inc. ("Humana") hereby moves to dismiss the complaint filed by plaintiffs in its entirety. A memorandum in support of this motion is attached.

DATED: March 28, 2016

Respectfully submitted,

*s/ Pierre H. Bergeron*
Pierre H. Bergeron (90595)
**SQUIRE PATTON BOGGS (US) LLP**
221 East Fourth Street, Suite 2900
Cincinnati, Ohio 45202
Telephone: (513) 361-1200
Facsimile: (513) 361-1201
pierre.bergeron@squirepb.com

*Counsel for Humana Inc.*

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**

| | |
|---|---|
| **EXACT SCIENCES CORPORATION, *et al.*,**<br><br>**Plaintiffs,**<br><br>**vs.**<br><br>**HUMANA INC.**<br><br>**Defendant.** | **Case No. 3:16-CV-58-JHM**<br><br>**Judge Joseph H. McKinley, Jr.**<br><br>**Magistrate Judge Dave Whalin** |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

## INTRODUCTION

After Plaintiffs Exact Sciences Corporation and Exact Sciences Laboratories, LLC ("Plaintiffs") sent Humana a cease and desist notice demanding that Humana stop circulating a particular flier, Humana agreed to withdraw the flier. Humana's reward for its cooperation was a nearly 200-paragraph complaint in federal court. This scattershot complaint raises claims that are both procedurally and substantively improper, and that fail to satisfy basic pleading requirements.

Plaintiffs are the entities that manufacture Cologuard—a colorectal cancer screening test—and process Cologuard test results. Plaintiffs seek compensation from Humana to recover benefits under the terms of unidentified employer-sponsored welfare benefit plans governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, and other unidentified health plans. To that end, Plaintiffs seek recovery primarily through assignments of benefits ("AOBs") allegedly received from unidentified members of Humana plans.

Plaintiffs' Complaint is a mish-mash of conclusory and inconsistent allegations and represents the sort of shot-gun pleading that has drawn the ire of federal courts. This case should be a straightforward dispute regarding benefits. Instead, Plaintiffs filed a twelve count Complaint that fails to allege sufficient facts to state a claim and must be dismissed for several reasons. First, with respect to Plaintiffs' ERISA claims purportedly brought as assignees of Humana members, those claims should still be dismissed because Plaintiffs failed to exhaust the administrative remedies afforded under the Plans and cannot meet the exacting standard for demonstrating futility. Plaintiffs cannot seek to sue as assignees of the members' plan benefits, but skip the administrative procedures required under the terms of the same plans. Second, all of Plaintiffs' purported ERISA claims are invalid on their face because Plaintiffs failed to allege facts sufficient to establish Humana's "fiduciary" status under ERISA. Finally, Plaintiffs' purported ERISA claims in Counts 2 and 3 of the Complaint should be dismissed for failure to state valid claims because Count 2 (violation of fiduciary duty) is not permitted as duplicative of Count 1 for payment of benefits and Count 3 (for full and fair review) does not permit the recovery of the benefits sought by Plaintiffs.

Plaintiff's ostensible state law claims are likewise subject to dismissal for several reasons. First, the claims are preempted because they plainly relate to an ERISA plan and resolution of Plaintiffs' claims necessarily require evaluation of the plans and the parties' performance pursuant to them, so that the claims are preempted (they are likewise preempted to the extent they relate to Medicare plans). Second, Plaintiffs' claims must be dismissed because they go far beyond the scope of the assignments allegedly provided by the Humana subscribers

in the AOBs. Finally, a number of Plaintiffs' claims should also be dismissed because they fail to state viable claims under Kentucky law.[1] This Court should accordingly dismiss this case.

## FACTUAL BACKGROUND

### I. Plaintiffs' Allegations

Construing the facts in Plaintiffs' favor, Plaintiffs allege that Humana improperly denied benefits for the costs of Plaintiffs' colorectal cancer screening test. (Compl. ¶ 1.) Plaintiffs claim that Humana has been denying benefits since at least October 2014 and that in doing so, Humana has violated its duties under ERISA and state law. (*Id.* ¶¶ 1-2.) Specifically, Plaintiffs assert that Humana has violated ERISA and state law by "failing and refusing to pay Exact promptly and in full for the tests that Exact has performed for patients covered by the Plans provided or administered by Humana . . . ." (*Id.* ¶ 3.)

Plaintiffs also allege that Humana distributed a flier (the "Flier") falsely advising medical providers with whom Humana had existing relationships that "Cologuard® is not covered under Humana's commercial plans . . . ." (*Id.* ¶¶ 7 & 57.) Plaintiffs claim that "Humana has sent the Flier directly to its in-network healthcare providers in Kentucky." (*Id.* ¶ 60.)

Plaintiffs admit that they do not have a contractual relationship with Humana. Instead, they claim that Humana members assigned their insurance benefits to them. Plaintiffs failed to attach any of these AOBs to their Complaint or to provide Humana with the identity of any of the members who purportedly provided these assignments. (*Id.* ¶¶ 43-45.) Plaintiffs claim that the AOB includes the following language:

---

[1] It is unclear from the Complaint which State's laws Plaintiffs purport to invoke. However, because Plaintiffs appear to invoke a number of Kentucky statutes as the basis for their state law claims, Humana will assume that Plaintiffs intend to apply Kentucky law to each of their state law claims. To the extent Plaintiffs take a different position in opposing Humana's motion, Humana expressly reserves the right to raise additional grounds for dismissal under any other state's laws raised in Plaintiffs' opposition.

> ***Authorization to assign benefits, accept financial responsibility, and disclose health records.*** *I authorize Exact Sciences Laboratories to bill my insurance/health plan and furnish them with my Cologuard® order information, my test results, or other information requested for reimbursement, to appeal any reimbursement denial and authorize all reimbursements to be paid directly to the laboratory in consideration for services performed. I understand that I am responsible for any amount not paid, including amounts for non-covered services.*

(*Id.* ¶ 45.) Plaintiffs allege that for each of the insurance claims at issue in this litigation, "the beneficiary provided an AOB in a form identical or substantially the same . . . ." (*Id.* ¶ 46.)

With respect to the insurance claims at issue, Plaintiffs assert that Humana has "wrongfully denied 120 Cologuard® claims totaling $69,701 in Kentucky." (*Id.* ¶ 52.) Plaintiffs also allege that Humana has denied 293 Cologuard claims totaling $168,965 in "Coverage Mandate States other than Kentucky." (*Id.* ¶ 55.) In total, Plaintiffs argue that since October 2014, they have performed Cologuard tests for 4,664 Humana members nationwide and that their total billed charges for these claims exceed $800,000. (*Id.* ¶ 68.)[2]

While acknowledging they have not exhausted their claims, Plaintiffs claim, in conclusory fashion, that "Humana has adopted a pattern or practice of wrongfully denying Exact's claims, such that further exhaustion would be futile." (*Id.* ¶ 79.) But these assertions are belied by Plaintiffs' own allegations. For example, out of the 4,664 tests allegedly performed for Humana members, Plaintiffs claim to have submitted 1,053 appeals; of those appeals, Plaintiffs assert that Humana denied only 528 of them (which suggests that Humana has granted nearly half of them). (*Id.* ¶¶ 73-74.) Plaintiffs also admit that Humana has paid at least 350 claims. (*Id.* ¶ 74.) These factual allegations are inconsistent with Plaintiff's conclusion that Humana has "systematically denied" all Cologuard claims and that further appeals would be futile.

---

[2] Plaintiffs do not appear to include all of the 4,664 insurance claims as part of this dispute, but the numbers vary enough throughout the Complaint that the exact number of claims at issue are not easily determined.

In connection with their claim for benefits, Plaintiffs assert the following claims: (1) Claim for ERISA Benefits – Count 1; (2) Violation of Duties of Loyalty and Due Care in Violation of ERISA – Count 2; (3) Denial of Full and Fair Review in Violation of ERISA § 503 – Count 3; (4) Violation of the Kentucky Mandate, KRS § 304.17A-257 – Count 4; (5) Declaratory Judgment – Count 5; (6) Breach of Contract as Assignees – Count 6; (7) Breach of Contract as Third-Party Beneficiary – Count 7; (8) Breach of Fiduciary Duty – non-ERISA – Count 8; (9) Breach of the Duty of Good Faith and Fair Dealing – non-ERISA – Count 9; (10) Insurance Bad Faith – non-ERISA – Count 10; (11) Tortious Interference with Prospective Economic Advantage – Count 11; and (12) Quantum Meruit – Count 12.

## **LAW & ARGUMENT**

### I. Legal Standard

The pleading standard in Rule 8(a)(2) does not require detailed factual allegations, but "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2008) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To withstand a Rule 12(b)(6) motion to dismiss for failure to state a claim, it is not enough that the complaint contains "facts that are merely consistent with a defendant's liability," rather, a plaintiff must allege "facts — not legal conclusions or bald assertions — supporting a 'plausible' claim for relief." *Id.* at 687 (quoting *Twombly*, 550 U.S. at 557). A complaint that offers legal conclusions or a recitation of the elements of a cause of action will not meet this pleading standard. *See id.* "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005). The court must take all of the factual allegations in the complaint as true, but is "not bound to accept as a true a legal conclusion couched as a factual

allegation." *Iqbal*, 556 U.S. at 678. If the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has not shown the pleader is entitled to relief. *Id.* at 677-78. *See also Buridi v. Branch Banking and Trust Co.*, 2013 U.S. Dist. LEXIS 40967 (W.D. Ky. March 25, 2013); *Our Lady of Bellefonte Hospital, Inc. v. Tri-State Physicians Network, Inc.*, No. 2007 U.S. Dist. LEXIS 72286 (E.D. Ky. Sept. 27, 2007). Plaintiffs' Complaint fails to meet these basic standards and should be dismissed.

## II. Plaintiffs' Assignment-Based Claims, Other than for Payment of Benefits, Must Be Dismissed Because They Exceed the Limited Scope of the Humana Members' Purported Assignments.

Nine of Plaintiffs' claims are based on a supposed assignment of members' plan benefits to Plaintiffs (Counts 1, 2, 3, 4, 5, 6, 8, 9 & 10). Even the limited AOB language Plaintiffs allege in the Complaint reveals that this action far exceeds the scope of what was purportedly assigned and each of the assignment-based claims should be dismissed.

The language of the AOBs is very narrow and provides that the Humana members "authorized Exact Sciences Laboratories to bill [Humana] and furnish them with my Cologuard® order information, my test results, or other information requested for reimbursement, to appeal any reimbursement denial, and authorize all reimbursements to be paid directly to the laboratory in consideration for services performed." (Compl. ¶ 45.) The AOBs also contain an acknowledgment that members are "responsible for any amount not paid, including amounts for non-covered services." *Id.* Conspicuously absent is the sort of broad assignment language assigning *any and all* claims and causes of action that Humana members had or may have had against Humana which could justify the litany of claims Plaintiff initiated against Humana.

Under Kentucky law, construction and interpretation of assignments—like any other contracts—is governed by the specific terms of the assignment and this Court should look to the

plain language of the AOBs to determine the precise scope of the rights assigned. *See Frear v. P.T.A. Indus., Inc.*, 103 S.W.3d 99, 105-06 (Ky. 2003) (recognizing that generally written contracts "will be enforced strictly according to [their] terms" and that the court will interpret those terms "by assigning language its ordinary meaning and without resort to extrinsic evidence."). Courts typically narrowly construe the scope of rights assigned pursuant to written assignment agreements. *See In re Commercial Money Ctr., Inc.*, 603 F. Supp. 2d 1095, 1131-32 (N.D. Ohio 2009) (discussing Ohio and California law). Given the limited scope of the assignment, each of Plaintiffs' claims through member rights, other than for payment of benefits, should be dismissed because the Humana members did not assign any rights beyond seeking payment of benefits.

In *Spinedex Physical Therapy USA Inc. v. United Healthcare of Arizona*, 770 F.3d 1282, 1292 (9th Cir. 2014), the Ninth Circuit considered whether patients assigned a provider the right to bring a breach of fiduciary duty claim against United Healthcare. As is the case here, the assignment signed by the plan beneficiaries was narrow and assigned to the provider "the right to seek payment of claims directly from their Plans." The provider asserted that the "right to seek payment" language referred to the right to bring claims for payment, including fiduciary duty claims. *Id.* The Ninth Circuit rejected this interpretation of the assignment and agreed with the district court's dismissal of the fiduciary duty claim. *Id.* In so holding, the court recognized that the provider's argument was "divorced from context" because the "entire focus of the Assignment is payment for medical services provided by Spinedex." *Id.* The court stressed that the Assignment "***nowhere indicates that, by executing the assignment, patients were assigning to Spinedex rights to bring claims for breach of fiduciary duty***." *Id.* (emphasis added). Instead, the court found that "the Assignment indicates ***patients intended to assign to Spinedex***

***only their rights to bring suit for payment of benefits***." *Id.* (emphasis added). As a result, the provider did not have the right to bring a claim for breach of fiduciary duty. *Id.*

The Court should apply the same reasoning here, which comports with general principles of Kentucky contract interpretation. The AOBs relied upon by Plaintiffs at best provided a narrow assignment of the right to bring suit for payment of benefits. The language of the assignment is plainly focused on payment for medical services provided by Plaintiffs and, like the *Spinedex* assignment, does not include any language suggesting that Humana members were assigning to Plaintiffs the right to bring the numerous other claims brought by Plaintiffs in this litigation. That means that the members have retained any rights that they might have, which could subject Humana to multiple (and inconsistent) suits both by Plaintiffs and potential members. The Court should accordingly dismiss all claims premised on the AOBs except those that simply challenge denial of benefits (but those fail for other reasons, described below).

## III. Plaintiffs' ERISA Claims Must be Dismissed (Counts 1, 2 and 3).

In Counts 1, 2, and 3 of the Complaint, Plaintiffs attempt to make assignment-based claims for duties allegedly owed to Humana's members under ERISA. Count 1 is a relatively straightforward request for payment of plan benefits under 28 U.S.C. § 1132(a)(1)(B). Counts 2 and 3 seek relief for supposed breached of fiduciary duties and failure to provide full and fair review. Each of these claims fails for a variety of reasons in addition to those set forth above.

### A. Plaintiff Failed to Exhaust Available Administrative Remedies.

It is well settled that "[t]he administrative scheme of ERISA requires a participant to exhaust his or her administrative remedies prior to commencing suit in federal court." *Costantino v. TRW, Inc.*, 13 F.3d 969, 974 (6th Cir. 1994); *Hill v. Blue Cross and Blue Shield of Mich.*, 409 F.3d 710, 717 (6th Cir. 2005) ("ERISA plan beneficiaries must exhaust

administrative remedies prior to bringing a suit for recovery on an individual claim[.]”). Administrative exhaustion serves a number of purposes, including minimizing the number of frivolous ERISA lawsuits, promoting the consistent treatment of benefit claims, providing a non-adversarial dispute resolution process, and decreasing the cost and time of claims settlement. *Costantino*, 13 F.3d at 975 (citing *Makar v. Health Care Corp. of the Mid-Atlantic (CareFirst)*, 872 F.2d 80, 83 (4th Cir. 1989)).

This requirement applies equally to purported assignees of ERISA benefits such as Plaintiffs. *See Weiner v. Klais & Co., Inc.*, 108 F.3d 86 (6th Cir. 1997). In *Weiner*, a physician obtained assignments from six patients and sued their health plans to recover ERISA benefits. The Sixth Circuit affirmed the district court’s dismissal of the complaint and held that the “plaintiff should have exhausted the administrative remedies provided under the plans and, because he did not, dismissal of his action for recovery of benefits is proper.” *Id.* at 91.

The Court should reach the same conclusion here. Plaintiffs do not dispute the applicability of the exhaustion requirement. Instead, they assert in conclusory fashion that exhaustion should be excused or that their claims should be deemed exhausted, using a futility-based waiver argument. (Compl. ¶¶ 93, 109.) Plaintiffs’ bare allegations, coupled with factual allegations contradicting them, do not satisfy the high standards of the futility exception to the exhaustion requirement.

Courts in the Sixth Circuit recognize that a plaintiff must show that it is “***certain that [their] claim will be denied on appeal***, not merely that [they] doubt[] that an appeal will result in a different decision” for futility-based waiver of the exhaustion requirement to apply. *See Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 418-19 (6th Cir. 1998) (emphasis added). Doubts about the likelihood of success on appeal are insufficient; clear and positive indications

of futility are required. *See Harris v. Pepsi Bottling Group, Inc.*, 438 F. Supp. 2d 728, 731 (E.D. Ky. 2006) ("In order to successfully argue the futility of exhaustion, a claimant bears the burden of proving futility beyond mere conclusory allegations. Rather, the claimant must make a clear and positive indication of futility."). Vague allegations of "fruitless discussions" and filing "some sort of unspecified claim" without reference to review procedures or adherence to those procedures likewise do not "adequately allege predicate exhaustion." *Borman v. The Great Atlantic & Pacific Tea Co., Inc.*, 64 Fed. App'x 524, 528-29 (6th Cir. May 22, 2003) (affirming dismissal of complaint).

Here, Plaintiffs fall woefully short of meeting this exacting standard. Plaintiffs offer no specific allegations of exhaustion, only speculation and legal conclusions. (*See, e.g.*, Compl. ¶ 93 ("As a result of, among other acts, Humana's numerous procedural and substantive violations of ERISA, any appeals are deemed exhausted or excused . . .").) In addition, Plaintiffs' own allegations reveal that the futility standard cannot be met in this case. Plaintiffs have not alleged that if they had utilized the administrative-review procedures available to them, it is certain that their claims would have been denied on appeal. In fact, Plaintiffs' factual allegations show the contrary. Of the 4,664 Cologuard tests that Plaintiffs claim to have performed on Humana members nationwide since October 2014, Plaintiffs claim to have submitted only 1,053 internal appeals. (Compl. ¶ 74.) Plaintiffs allege that Humana has denied only 528 of those appeals, which by negative implication suggests that Plaintiffs have been successful in nearly half of the appeals. (*Id.*) As such, Plaintiffs cannot establish a clear and positive indication of futility or that it is "certain that [their] claim[s] will be denied on appeal . . . ." *Fallick*, 162 F.3d at 418-19. In addition, Plaintiffs concede that Humana ***paid benefits on at least 350 claims***. (*Id.*) That Humana has paid at least some claims and has previously provided relief when presented with

some claim disputes renders the futility exception inapplicable. *See Coomer v. Bethesda Hosp., Inc.*, 370 F.3d 499, 505-06 (6th Cir. 2004) (concluding that the futility exception was inapplicable where the defendant had previously provided relief when presented with claim disputes). Plaintiffs' own allegations thus also rebut their conclusory claim that "Humana has adopted a clear policy of excluding coverage for Cologuard®." (Compl. ¶ 109.)

ERISA claims are routinely dismissed for failure to exhaust where a plaintiff cannot plausibly plead that "it is certain that his claim will be denied on appeal, not merely that he doubts that an appeal will result in a different decision." *Fisk v. Cigna Group Ins.*, 2011 U.S. Dist. LEXIS 113903, at *10, *17 (E.D. Ky. Oct. 3, 2011) (granting motion to dismiss where plaintiff could not "show by clear and positive indication that his pursuit of administrative remedies would be futile."). This Court should reach the same conclusion here and dismiss Counts 1, 2, and 3 as a result of Plaintiffs' failure to exhaust available administrative remedies.

### B. Plaintiffs Fail to Allege Any Facts Identifying Humana as a Fiduciary Subject to ERISA.

"In order to bring an ERISA claim against a party, the entity must be an ERISA fiduciary who exercises 'discretionary authority over plan management, or any authority or control over plan assets.'" *Wetzelberger v. Principal Ins. Co.*, 2006 U.S. Dist. LEXIS 77334, at *8 (W.D. Ky. Oct. 19, 2006) (citing *Briscoe v. Fine*, 444 F.3d 478, 488 (6th Cir. 2006)). A plaintiff's failure to identify the basis for subjecting a party to ERISA liability as a fiduciary requires dismissal of the complaint. *See generally Akers v. Palmer*, 71 F.3d 226, 231 (6th Cir. 1995) ("Only discretionary acts of plan management or administration, or those acts designed to carry out the very purposes of the plan, are subject to ERISA's fiduciary duties.").

In *Pipefitters Local 636 v. Blue Cross & Blue Shield of Mich.*, 213 Fed. App'x 473 (6th Cir. 2007), the plaintiff alleged that Blue Cross breached its fiduciary duty by failing to provide

certain claims-related information. Blue Cross, however, sought and obtained dismissal of the complaint because the plaintiff failed to allege facts establishing that Blue Cross was a fiduciary for such purposes under ERISA. The Sixth Circuit affirmed the dismissal and explained that:

> The complaint does not specify how [Blue Cross] was exercising discretionary authority in deciding not to release the records, and offers only the conclusion that [Blue Cross] is a fiduciary under ERISA. Although the complaint clearly indicates the types of records sought, it does not allege facts to establish that [Blue Cross] was acting as a fiduciary when it decided not to release such information.

*Id.* at 479 (citations to record omitted); *see also D'Amato v. Corporate Consulting, Inc.*, No. 94-3218, 1995 U.S. App. LEXIS 24611, at *5 (6th Cir. Aug. 28, 1995) ("Although the complaint makes a conclusory allegation that Blue Cross was the administrator of the plan, it does not contain any factual allegations to support this conclusion and, hence, cannot survive a Rule 12(b)(6) challenge.").

Here, Plaintiffs do not allege any facts whatsoever to establish Humana's fiduciary status under any of the unidentified ERISA plans pursuant to which they seek payment of benefits. There are no allegations that Humana had sufficient control or discretionary authority over the administration of any of the unidentified ERISA plans to subject Humana to fiduciary liability. Humana may have been acting merely as a third party administrator of these plans or otherwise performing ministerial functions. Humana's authority to make coverage decisions might have been subject to veto or override by some other plan administrator. Thus, Plaintiffs have not alleged an appropriate factual predicate to permit the advancement of any of their ERISA claims (Counts 1, 2, and 3).

### C. Plaintiffs Fail to State an ERISA Claim for Violation of Fiduciary Duties of Loyalty and Care under 29 U.S.C. § 1132(a)(3) (Count 2)

Plaintiffs' ERISA claim for breach of the fiduciary duties of loyalty and care should also be dismissed because Plaintiffs do not seek appropriate relief under 29 U.S.C. § 1132(a)(3). Section 1132(a)(1)(B) of ERISA permits plan participants to bring suit "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the plan." Plaintiffs have brought precisely such a claim. (Compl. ¶ 83 ("Exact files this action pursuant to . . . 28 U.S.C. § 1132, to recover benefits . . . .").) At the same time, Plaintiffs also purport to invoke 29 U.S.C. § 1132(a)(3), which is limited to suits for "appropriate equitable relief" for violations of ERISA or a plan.

The Supreme Court has repeatedly recognized that ERISA is a "comprehensive and reticulated statute." *See, e.g.*, *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 209 (2002) (quotations omitted). ERISA contains a detailed civil enforcement framework set forth in Section 1132(a)—which Plaintiffs invoke—and which the Supreme Court is "reluctant to tamper with" given the "evident care" with which it was crafted. *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 147 (1985). As a result, Section 1132(a)(3) is limited to allowing plan participants to "obtain other appropriate equitable relief" for ERISA violations and serves as a "catchall" provision, which remedies "injuries caused by violations that § 502 does not elsewhere adequately remedy." *Variety Corp v. Howe*, 516 U.S. 489, 512 (1996). However, "where Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief normally would not be 'appropriate.'" *Id.* at 515; *see also Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 615-16 (6th Cir. 1998) (holding that "[b]ecause § 1132(a)(1)(B) provides a remedy for [the plaintiff's] alleged injury that allows him to bring a lawsuit to challenge the . . . denial of benefits to which he believes he is entitled, he does not have a cause of action for breach of fiduciary duty pursuant to §

1132(a)(3) . . . To rule in [the plaintiff's] favor would allow him and other ERISA claimants to simply characterize a denial of benefits as a breach of fiduciary duty, a result which the Supreme Court expressly rejected.").

Here, because Section 1132(a)(1)(B) provides a remedy for the denial of benefits which is the basis of Plaintiffs' alleged injury, Plaintiffs do not have a cause of action for breach of fiduciary duty under Section 1132(a)(3). In *Rochow v. Life Ins. Co. of N. Am.*, 780 F.3d 364 (6th Cir. 2015), a recent *en banc* decision, the Sixth Circuit considered whether a claimant for disability benefits could maintain separate claims for breach of fiduciary duty and disgorgement under Section 1132(a)(3). The Court rejected this argument and held that the equitable remedies under Section 1132(a)(3) were unavailable because Section 1132(a)(1)(B) provided an adequate remedy of benefits under the plan. *Id.* at 374-75. The Court explained that because the injury suffered by the plaintiff was "the denial of his benefits," his claim for equitable relief for breach of fiduciary duty was "nothing but a repackaged claim for benefits wrongfully denied." *Id.* The Sixth Circuit specifically noted that because the plaintiff made no showing that the benefits he received under Section 1132(a)(1)(B) failed to make him "whole," there was no "trigger" for further equitable relief. *Id.* at 371 ("Contrary to [plaintiff's] arguments, [he] is made whole under § 502(a)(1)(B) through recovery of his disability benefits and attorney's fees, and potential recovery of prejudgment interest").

Several recent decisions from this District have applied the same rationale as *Rochow* and dismissed ERISA fiduciary duty claims. In *Hackney v. Lincoln Nat. Life Ins. Co.*, 2014 U.S. Dist. LEXIS 111142 (W.D. Ky. Aug. 12, 2014), the plaintiff filed suit for ERISA plan benefits, breach of fiduciary duty, and disgorgement. *Id.* at *1, *3-4. The Court, however, dismissed the fiduciary duty and disgorgement claims. The Court first rejected the plaintiff's claim that his

fiduciary duty claim sought "plan-wide relief for systematic claims administration defects." *Id.* at *10-12. It found that the "alleged breach of fiduciary duty claim essentially amounts to a contention that Lincoln improperly processed Hackney's claim for benefits." *Id.* at *14-15. Specifically, the Court held that because of the possible available relief under Section 1132(a)(3), be it "an injunction, plan-wide relief for systematic administration defects, or reformation of the policy would not accomplish anything beyond a potential award of these benefits." *Id.* Because the relief already allowed under Section 1132(a)(1)(B) would potentially remedy the plaintiff's injury, the Court found that the complaint failed to state a plausible claim for relief as to the fiduciary duty and disgorgement counts and granted the motion to dismiss. *Id.* at *15, *17.

Similarly, in *Myers v. Anthem Life Ins. Co.*, 2015 U.S. Dist. LEXIS 143475 (W.D. Ky. Oct. 22, 2015), this Court applied the same reasoning in dismissing an ERISA claim for breach of fiduciary duty. Consistent with *Rochow* and *Hackney*, this Court explained that a Section 1132(a)(3) claim "must be more than a repackaged denial of benefits claim under § 1132(a)(1)(B)" and found that the fiduciary duty claim alleged the same injury as the claim for denial of benefits under § 1132(a)(1)(B). *Id.* at *6-8; *see also Gluc v. The Prudential Ins. Co. of Am.*, 2015 U.S. Dist. LEXIS 143628, at *9 (Oct. 22, 2015) (granting motion for partial judgment on the pleadings on fiduciary duty claim where the plaintiff "allege[d] only an injury for which § 1132(a)(1)(B) provides an adequate remedy . . . .").

The same reasoning applies with equal force in this case. The Complaint does not contain factual allegations that set forth an injury that is "separate and distinct from the denial of benefits" and the fiduciary duty claim is simply a repackaging of Plaintiffs' claim for benefits. Indeed, the fiduciary duty claim plainly seeks to challenge the denial of and payment of benefits.

(Compl. ¶ 100 ("Humana has violated its fiduciary duty of loyalty to Exact by, among other things, ***refusing to make reimbursements for Cologuard® tests . . .***"), 102 ("***Exact is entitled to recover benefits due to the Humana Subscribers and enforce the rights of Humana Subscribers under the terms of the Plans and policies***") & 103 ("Humana has violated their fiduciary duty of loyalty to Exact by, among other things: ***refusing to cover Cologuard® tests . . .***") (emphasis added).) Because 29 U.S.C. § 1132(a)(1)(B) potentially provides an adequate remedy for the harm alleged, Plaintiffs' breach of fiduciary duty claim (Count 2) does not seek "appropriate relief" and should be dismissed with prejudice.

**D. Plaintiffs' Claim for Full and Fair Review Is Improper (Count 3).**

Plaintiffs allege a litany of procedural violations—which Humana disputes—under 29 U.S.C. § 1133 and 29 CFR 2560.503-1 and 29 CFR 2590.715-2719. However, even if these allegations were true, Plaintiffs fail to recognize that for procedural violations of 29 U.S.C. § 1133, the appropriate remedies are procedural, such as remanding the claim to the plan administrator for full and fair review. *See generally Blajei v. Sedgwick Claims Mgmt. Servs.*, 721 F. Supp. 2d 584, 609 (E.D. Mich. 2010) (finding that the defendant failed to substantially comply with the requirements of § 1133 but remanding to the plan administrator for "full and fair review" where the court could not say that the plaintiff was "clearly entitled" to benefits). Thus, even if Plaintiffs were correct and the alleged procedural violations occurred, the proper remedy would be remand so that the plan administrator can conduct a "full and fair review". *Elliott v. Metro. Life Ins. Co.*, 473 F.3d 613, 622 (6th Cir. 2006) (recognizing that "where the problem is with the integrity of [the plan's] decision-making progress, rather than that [a claimant] was denied benefits to which he was clearly entitled, the appropriate remedy generally is remand to the plan administrator" for a full and fair review) (internal citations and quotations omitted);

*Gagliano v. Reliance Standard Life Ins. Co.*, 547 F.3d 230, 240 (4th Cir. 2008) (recognizing that "a breach of section 1133 does not provide a claimant with any new substantive right" and that in cases where there is a procedural ERISA violation "the appropriate remedy is to remand the matter to the plan administrator so that a 'full and fair review' can be accomplished."); *Love v. Nat'l City Corp. Welfare Benefits Plan*, 574 F.3d 392, 398 (7th Cir. 2009) ("[W]hen a court or agency fails to make adequate findings or fails to provide an adequate reasoning, the proper remedy in an ERISA case . . . is to remand for further findings or explanations . . . .") (citations and quotations omitted). As a result, even if Plaintiffs were able to state a plausible claim for failure to provide full and fair review, the appropriate remedy would be a remand to the plan administrator for further review. And, of course, the only reason that a full and fair review has not yet occurred (assuming it has not) is that Plaintiffs have refused to exhaust their administrative remedies.

## IV. Plaintiffs' State Law Claims Must Be Dismissed.

### A. Plaintiffs' State Law Claims Are Preempted by ERISA.

ERISA broadly preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). Congress intended for ERISA to preempt traditional state-based laws that implicate relations among the traditional ERISA plan entities, including the principals, the employer, the plan, the plan fiduciaries, and the beneficiaries. *Thurman v. Pfizer, Inc.* 484 F.3d 855, 861 (6th Cir. 2007). Accordingly, where a state law claim "may fairly be viewed as an alternative means of recovering benefits allegedly due under ERISA, there will be preemption." *Briscoe v. Fine*, 444 F.3d 478, 498 (6th Cir. 2006) (citation and internal quotation marks omitted). Moreover, if resolution of the state-law claim

"necessarily requires evaluation of the plan and the parties' performance pursuant to it, the claim is preempted." *Thurman*, 484 F.3d at 862.

In addition, it is well-recognized that the phrase "relate to" is "'given its broad common-sense meaning, such that a state law 'relates to' a benefit plan in the normal sense of the phrase, if it has a connection with or reference to such a plan.'" *Basham v. Prudential Ins. Co. of America*, 2012 U.S. Dist. LEXIS 165637, at *18 (W.D. Ky. Nov. 20, 2012) (quoting *Metro. Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 739 (1985)). As a result, common law breach of contract and tort claims "based on alleged improper processing of a benefit claim under an employee benefit plan" against the insurance company that issues an employer's group insurance policy fall under ERISA's preemption clause." *Id.* at *18 (internal citations and quotations omitted). ERISA's preemption clause has a very broad sweep and was crafted by Congress to provide a "'uniform regulatory scheme' and to ensure that employee benefit regulation remains 'exclusively a federal concern.'" *Id.* at *18-19 (quoting *Aetna v. Davila*, 542 U.S. 200 (2004)).

Here, Plaintiffs' state law claims arise from their claim to entitlement of benefits under ERISA plans. The claims arise in whole, or in part, from the ERISA plans, require evaluation of the Plans and the parties' performance under them, and would require this Court to consider the ERISA plan documents to determine whether there have been breaches of any state law duties, a further indication that ERISA preempts these claims.[3] Ultimately, Plaintiffs seek payment for the Cologuard tests performed on the unidentified members of Humana's plans. Because these remedies are available under the civil enforcement mechanisms of ERISA, each of Plaintiffs' state law claims (Counts 4 through 12) are preempted.

---

[3] *See also Thurman*, 484 F.3d at 861-62 (6th Cir. 2007) (recognizing that if resolution of the state-law claim "necessarily requires evaluation of the plan and the parties' performance pursuant to it, the claim is preempted."); *Briscoe*, 444 F.3d at 498 ("[W]hen a state law claim may fairly be viewed as an alternative means of recovering benefits allegedly due under ERISA, there will be preemption.").

Here, the thrust of Plaintiffs' Complaint concerns the denial of benefits that were allegedly due to Humana members—and assigned to Plaintiffs—under ERISA plans. Notwithstanding Plaintiffs' efforts to characterize these claims as state law claims, each of the claims stem from the alleged improper evaluation and denial of a claim for benefits under a plan, and therefore relate to an ERISA plan under § 514(a). *See Dedeaux*, 481 U.S. at 43; *Garren v. John Hancock Mut. Life Ins. Co.*, 114 F.3d 186, 187 (11th Cir. 1997) (recognizing that a state law claim is intertwined with the refusal to pay benefits" or "where the state law claim . . . affects the relationship between ERISA entities."); *see also Basham*, 2012 U.S. Dist. LEXIS 165637, at *25-26 (dismissing breach of contract, good faith and fair dealing, and tortious interference claims based on application of preemption).

The Sixth Circuit has routinely recognized that "virtually all state law claims relating to an employee benefit plan are preempted by ERISA" and that "[i]t is not the labels placed on a state law claim that determines whether it is preempted, but whether in essence such a claim is for the recovery of an ERISA plan benefit." *Cromwell v. Equicor-Equitable HCA Corp.*, 944 F.2d 1272, 1276 (6th Cir. 1991) (affirming dismissal of promissory estoppel, negligent misrepresentation, breach of contract, and breach of good faith and fair dealing claims based on ERISA preemption). Regardless of the labels that Plaintiffs attempt to place on their state law claims (Counts 4 through 12) they are at their core claims for recovery of ERISA benefits and must be dismissed as preempted.[4]

**B. Plaintiffs' State Law Claims are Preempted by the Medicare Act.**

---

[4] Plaintiffs appear to attempt to designate Counts 8 through 10 as non-ERISA claims (breach of fiduciary duty, breach of the duty of good faith and fair dealing, and insurance bad faith). However, each of these claims seeks recovery of benefits under "Plans" which Plaintiffs have defined to include "employer-sponsored benefit plans, government-sponsored benefit plans, and individual health benefit plans (the 'Plans')." (Compl. ¶ 2.) Thus, even the three counts that Plaintiffs attempt to label as "non-ERISA" relate to ERISA plans and are preempted.

While Plaintiffs' Complaint does not specify what other non-ERISA plans are implicated by their claims, it would likely have to include Medicare claims. To the extent Plaintiffs are bringing state law claims related to the denial of Medicare benefits, those claims would be preempted by the Medicare Act.

Express preemption arises where, as here, Congress "define[s] explicitly the extent to which its enactments pre-empt state law" in the statute itself. *English v. Gen. Elec. Co.*, 496 U.S. 72, 78 (1990). In the Medicare Act, Congress included "a very broad, express preemption clause" that preempts "any" state laws affecting Medicare Advantage plans. *Potts v. Rawlings Co., LLC*, 897 F. Supp. 2d 185, 195 (S.D.N.Y. 2012); *see Phillips v. Kaiser Found. Health Plan*, 953 F. Supp. 2d 1078, 1087 (N.D. Cal. 2011) (describing the clause as "expansive"). The clause provides that:

> The standards established under [Part C] ***shall supersede any State law or regulation*** (other than State licensing laws or State laws relating to plan solvency) ***with respect to MA plans*** which are offered by MA organizations under [Part C].

42 U.S.C. § 1395w-26(b)(3) (emphasis added).

Congress promulgated the current preemption provision in 2003 to "broaden the preemptive effects of the Medicare statutory regime." *Uhm v. Humana Inc.*, 620 F.3d 1134, 1149 (9th Cir. 2010) (citing H.R. Rep. No. 108-391 at 557 (2003) (Conf. Rep.). Acknowledging "some confusion in recent court cases," Congress clarified that "[s]tate laws do not, and should not apply, with the exception of state licensing laws or state laws related to plan solvency." *Id.* (quoting H.R. Rep. No. 108-391, at 557). In short, Congress emphasized "that the MA program is a ***federal program operated under Federal rules***." *Id.* (emphasis added).

Courts have recognized the breadth of Congress' chosen preemption language, routinely rejecting attempts to avoid the federal standards by dressing claims up in state law attire. For

example, in *Uhm*, 620 F.3d at 1150, plaintiffs brought a variety of state law claims against Humana entities based on alleged misrepresentations regarding prescription drug coverage. The Ninth Circuit held that these claims were expressly "preempted by the extensive CMS regulations governing . . . marketing materials." *Id.* The express preemption provision precluded both plaintiffs' state statutory claims and their state "common law claims," including fraud and fraud in the inducement. *Id.* at 1156. The court reasoned that evaluating the provider's conduct under state-law standards despite federal standards on that topic would "undermine CMS's ability to create its own standards." *Id.* at 1157.

Here, to the extent Plaintiffs' state assignment-based claims are for payment of benefits under Medicare plans and claim that coverage is required under the Medicare Act, those claims would be preempted notwithstanding the state law labels that Plaintiffs attempt to apply to them.

**C. Plaintiffs Fail to State a Claim for Violation of the Kentucky Mandate (Counts 4 and 5) KRS 304.17A-257**

Plaintiffs appear to recognize that the language of K.R.S. § 304.17A-257, a statute mandating coverage for certain colorectal cancer screening, does not provide a right of action. As a result, Plaintiffs attempt to avoid the lack of a private right of action by invoking Kentucky's negligence per se statute, K.R.S. § 446.070. The Court should reject this claim (and the concomitant declaratory judgment claim) for two reasons.

First, the impropriety of this claim is revealed by the fact that there does not appear to be a single Kentucky decision discussing, much less recognizing the viability of, a claim under § 304.17A-257 whether directly or through § 446.070.

Second, Plaintiffs' Complaint misapprehends the applicability of the negligence *per se* statute. That statute is not a loophole around the private right of action requirement. Rather it functions as a mechanism for substituting a statutory standard of care for the common law

standard in the context of a negligence claim. *GATX Corp. v. Addington*, 879 F. Supp. 2d 633, 651 (E.D. Ky. 2012) (denying leave to amend a negligence per se claim under § 446.070 and recognizing that "[n]egligence *per se* is merely a negligence claim with a statutory standard of care substituted for the common law standard of care."); *Young v. Carran*, 289 S.W.3d 586, 588-89 (Ky. Ct. App. 2008) (quotations omitted). The negligence *per se* doctrine was codified by KRS § 446.070 which provides that "[a] person injured by the violation of any statute may recover from the offender such damages as he sustained by reason of the violation, although a penalty or forfeiture is imposed for such violation." Ky. Rev. Stat. § 446.070; *see generally Halcomb v. Britthaven, Inc.*, 2015 U.S. Dist. LEXIS 27215, at *10-11 (E.D. Ky. Mar. 5, 2015).

Even if Section 446.070 were read expansively to potentially allow for a private right of action under any Kentucky statute—which Humana does not believe because it should be limited to negligence based claims—it would not provide a basis for a claim here because Plaintiffs are not within the class of persons the statute was intended to protect and their injury is not the type of injury that the statute was designed to prevent. *See Vanhook v. Somerset Health Facilities, LP*, 67 F. Supp. 3d 810 (E.D. Ky. 2014) (finding use of statute to create standard of care requires that the plaintiff be the intended protected party and that her injury be the type the statute was designed to prevent). Here, the Kentucky statute was intended to protect patients, not manufacturers of medical devices or tests like Plaintiffs. In addition, Plaintiffs injury is purely financial, more than adequately compensated by the numerous other claims brought by Plaintiffs if they are found to have any merit, and not the sort of injury that the statute was designed to protect. Accordingly, Plaintiffs' claim for violation of the Kentucky Mandate pursuant to Section 446.070 should be dismissed.

### D. Plaintiffs Fail to State a Claim for Breach of Contract as Third Party Beneficiaries (Count 7).

Plaintiffs also seek to recover as third party beneficiaries of Humana's contracts with its members. However, under Kentucky law, it is settled that a "stranger" to a contract, such as Plaintiffs, may not exercise the "exceptional privilege of suing for breach of an agreement to which his not a party" unless he can show "that ***the contract was made and entered into directly or primarily for his benefit***." *Bariteau v. PNC Fin. Servs. Group, Inc.*, 285 Fed. App'x 218, 220 (6th Cir. 2008) (emphasis added). Plaintiffs have not pled any facts that would satisfy this exacting standard.

Under Kentucky law, a third party can only overcome the presumption that the "contracting parties did not intend to benefit a third party" where "the promisee's expressed intent is that the third party is to receive the performance of the contract in satisfaction of any actual or supposed duty or liability of the promisee to the beneficiary." *Id.* at 220 (citations and quotations omitted). Stated another way, the issue is "whether the parties intended the promisor to assume a direct obligation to the claimed beneficiary." *Id.* (citations and quotations omitted). If this is not the case, the third party "is at best an incidental beneficiary, ***a category of beneficiaries having no rights under the contract***." *Id.* at 221 (emphasis added).

Here, Plaintiffs have not pled any facts that plausibly suggest that they are intended third party beneficiaries under any of the Humana plans. Plaintiffs have not alleged that the Humana plans mention them or that the agreements were designed to benefit Plaintiffs—as opposed to benefitting Humana and its members. *See Hoheimer v. Hoheimer*, 30 S.W.3d 176, 178 (Ky. 2000). In addition, Plaintiffs have not alleged that the agreements impose any direct obligation on Humana to Plaintiffs or other companies like it. Humana's obligation, if any, was to its members. The fact that Plaintiffs benefit from these agreements indirectly by potentially being compensated for services rendered to Humana enrollees, to the extent those services were

covered, is insufficient to warrant treatment as third party beneficiaries under Kentucky law. Kentucky courts do not hesitate to dismiss third party beneficiary claims where the contract at issue was not directly and primarily for the benefit of the third party. *See Pruitt v. Genie Indus.*, 2013 U.S. Dist. LEXIS 4035, at *7-9 (E.D. Ky. Jan. 10, 2013) (granting motion to dismiss where the plaintiff failed to allege that "the contract in question was made for [its] actual and direct benefit."); *see also Simpson v. JOC Coal, Inc.*, 677 S.W.2d 305, 308 (Ky. 1984) (recognizing that "the mere fact that [a third person] will be incidentally benefited [sic] by the performance of the contract is not sufficient to entitle him to enforce it."). Accordingly, Plaintiffs' third party beneficiary breach of contract claim (Count 7) should be dismissed.

### E. Plaintiffs Fail to State a Claim for Breach of the Duty of Good Faith and Fair Dealing (Count 9)

Plaintiffs' claim for breach of the duty of good faith and fair dealing must be dismissed because it is entirely duplicative of Plaintiffs' claim for payment of benefits. Kentucky law generally recognizes that "[t]he covenant of good faith is an obligation owed by both parties, and breach of this covenant can be the basis of a viable breach of contract claim." *State Auto Prop. & Cas. Ins. Co. v. Hargis*, 785 F.3d 189 (6th Cir. 2015). However, courts including in this District have recognized that a separate claim for breach of the duty of good faith and fair dealing cannot lie where such a claim is duplicative of a separate breach of contract claim. *See Time Warner Cable Midwest LLC v. Pennyrile Rural Electric Cooperative Corp.*, 2015 U.S. Dist. LEXIS 94372, at *11-12 (W.D. Ky. July 21, 2015) (dismissing good faith and fair dealing claim as duplicative of breach of contract claim). Here, Plaintiffs claim that Humana's conduct "has deprived Exact of its reasonable expectations and benefits as assignee of benefits under the Plans." (Compl. ¶ 155.) Because these are the same benefits sought by Plaintiff's breach of

contract claim (Count 6)—and because the express terms of the Plans either do or do not require the payment of benefits—this claim (Count 9) is duplicative and should be dismissed.

### F. Plaintiffs Fail to State a Claim for Insurance Bad Faith (Count 10)

To state a claim for bad faith under Kentucky's Unfair Claims Settlement Practices Act ("UCSPA"), a claimant must allege: (1) the insurer was obligated to pay the claim under the terms of the policy; and (2) the insurer lacked a reasonable basis in law or fact for denying the claim or acted with reckless disregard for whether any basis existed. *Wittmer v. Jones*, 864 S.W.2d 885, 890 (Ky. 1933). An insurer may "challenge a claim and litigate it if the claim is debatable on the law or the facts" without running afoul of the UCSPA. *Id.* While Plaintiffs set forth a number of legal conclusions posing as facts regarding their claim, they fail to allege any facts sufficient to show that Humana "knew there was no reasonable basis for denying the claim[s] or acted with reckless disregard." *Nationwide Mut. Fir. Ins. Co. v. Castle*, 2013 U.S. Dist. LEXIS 142484, at *9-11 (E.D. Ky. Oct. 2, 2013) (dismissing UCSPA claim because plaintiff failed to plausibly plead each of the required elements). Because Plaintiffs have failed to allege any facts suggesting that Humana acted in bad faith, as opposed to merely making an error in certain coverage determinations, Plaintiffs' bad faith claim (Count 10) should be dismissed.

### G. Plaintiffs Fail to State a Claim for Tortious Interference with Prospective Economic Advantage (Count 11).

Plaintiffs' tortious interference claim essentially attempts to repackage its other flawed claims into a tort claim. This claim fails under Kentucky law for a number of reasons. First, a tortious interference claim cannot lie against a defendant who is a party to the business relationship with which it allegedly interfered. *See Rawlings v. Breit*, 2003-CA-002785, 2005 Ky. App. LEXIS 780, at *3 (Ky. Ct. App. June 17, 2005) (recognizing that a party cannot

tortuously interference with a contract to which they are a party). Here, Humana was part of the relationship between Plaintiffs and the Humana members by virtue of its relationship with the Humana members and with various in-network health care providers. As such, Humana could not have committed tortious interference by communicating with its own members or in-network providers about a business relationship that it was part of.

Second, Plaintiffs' tortious interference claim fails because the Kentucky Supreme Court has made clear that "a showing of malice or wrongful conduct is essential to an intentional interference claim." *Ashland Hosp. Corp. v. Caldor*, 2007 Ky. App. Unpub. LEXIS 1060, at *12-13 (Ky. Ct. App. 2007); *see also NCAA v. Hornung*, 754 S.W.2d 855, 859 (Ky. 1988) (recognizing that "it is clear that to prevail a party seeking recovery must show malice or some significantly wrongful conduct . . . [s]ome element of ill will is seldom absent from intentional interference . . ."). Here, Plaintiffs have not pled any facts suggesting ill will or malice on the part of Humana or significantly wrongful conduct, even assuming for the sake of argument, that individual decisions made denying coverage were incorrect. *See Bus. Payment Sys., LLC v. BA Merch. Servs., LLC*, 2007 U.S. Dist. LEXIS 55149, at *14 (W.D. Ky. July 25, 2007) (granting motion to dismiss tortious interference claim where there were "no facts plead suggesting a bad motive" and the court could not find "any support for the allegation of ill will or malice necessary to state a claim for tortious interference . . . ."); *McIntosh v. Data RX Mgmt. Inc.*, 2014 U.S. Dist. LEXIS 23566, at *17-18 (W.D. Ky. Feb. 25, 2014) (granting motion to dismiss tortious interference claim where the plaintiff failed to plead that the defendant 'acted with any animosity toward [plaintiff] or against its own legitimate and lawful business interests."). Similarly, Plaintiffs have not alleged that Humana had any bad motive or wrongful purpose in sending the Flier to providers.

Finally, Plaintiffs' tortious interference claim should be dismissed because Plaintiffs have not pled any facts suggesting that their relationship with any Humana members has, in fact, been disrupted. Indeed, Plaintiffs have not alleged that Humana sent the Cologuard flier to Humana members; the Complaint alleges that the flier was sent to providers. Because Plaintiffs have not alleged any facts suggesting that Humana intended to or did disrupt their relationship with Humana members, the tortious interference claim (Count 11) must be dismissed.[5]

### H. Exact Sciences Fails to State a Claim for Quantum Meruit Under Kentucky Law.

Exact fails to state a claim for quantum meruit because there is an express contract between Humana and its members which dictates whether and to what extent Humana is required to pay for the Cologuard test. Under Kentucky law, it is well-settled that "where an express contract is made defining the circumstances under which an obligation may arise with reference to a certain subject matter such contract excludes the possibility of an implied contract concerning the same subject matter." *Sparks Milling Co. v. Powell*, 143 S.W.2d 75, 76 (Ky. 1940); *Johnson Controls, Inc. v. Jay Indus.*, 459 F.3d 717, 730 (6th Cir. 2006). The same is true with respect to quantum meruit claims. Indeed, numerous Kentucky courts have dismissed unjust enrichment or quantum meruit claims where an express contract covers the same subject

[5] It is telling that Plaintiffs only allege "[u]pon information and belief" that certain unidentified providers who received the flier ceased to prescribe Cologuard. (Compl. ¶ 169.) The Sixth Circuit has recognized that such allegations are problematic and insufficient to withstand a motion to dismiss. For example, in *In re Darvocet, Darvon, & Propoxyphene Products Liab. Litig.*, 756 F.3d 917 (6th Cir. 2014), the Sixth Circuit dismissed a failure to update claim which was plead upon "information and belief." *Id.* at 931-32. The Court explained that "[t]o survive a motion to dismiss, a complaint must plead 'facts' that create a 'plausible inference' of wrongdoing . . . . ***The mere fact that someone believes something to be true does not create a plausible inference that it is true***." *Id.* at 931 (emphasis added). Previously, in *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502 (6th Cir. 2013), the Court dismissed allegations of discrimination based on "information and belief" as "precisely the kinds of conclusory allegations that *Iqbal* and *Twombly* condemned and thus told us to ignore when evaluating a complaint's sufficiency." *Id.* at 506. The Court found "[t]hese naked assertions devoid of further factual enhancement contribute nothing to the sufficiency of the complaint." *Id.* (internal citations and quotations omitted); *see also Rouse v. Farmer*, 2015 U.S. Dist. LEXIS 31433, at *8-10 (E.D. Ky. Mar. 12, 2015) (dismissing TILA and RESPA claims plead based on "information and belief" as failing to "raise a right to relief above speculative level") (internal citations and quotations omitted).

matter. *See Lakeshore Eng'g v. Richmond Utils. Bld.*, 2013 U.S. Dist. LEXIS 44074, at *13-15 (E.D. Ky. Mar. 27, 2013) (granting motion to dismiss because a contract "will be implied only if there is no express contract covering the same subject matter."); *Miller v. Reminger Co., L.P.A.*, 2012 U.S. Dist. LEXIS 78620, at *31-32 (W.D. Ky. June 6, 2012) (granting motion to dismiss quantum meruit claim based on the existence of a written agreement and rejecting argument that claim could be maintained as an alternative theory of relief); *Gonzalez v. Imaging Advantage, LLC*, 2011 U.S. Dist. LEXIS 140971, at *5-6 (W.D. Ky. Dec. 7, 2011) (granting motion to dismiss quantum meruit claim and noting that "alternative pleading of an implied contract claim is only allowed in a contract setting where a party doubts the existence of a contract.").

Here, because an express contract exists that determines whether and to what extent Humana is required to pay for Cologuard tests, Plaintiffs' claim for quantum meruit (Count 12) should be dismissed.

## CONCLUSION

For all of the foregoing reasons, Humana respectfully requests that each of Plaintiffs' claims against it be dismissed with prejudice.

DATED: March 28, 2016

Respectfully submitted,

*s/ Pierre H. Bergeron*

Pierre H. Bergeron (90595)
**SQUIRE PATTON BOGGS (US) LLP**
221 East Fourth Street, Suite 2900
Cincinnati, Ohio 45202
Telephone: (513) 361-1200
Facsimile: (513) 361-1201
pierre.bergeron@squirepb.com

*Counsel for Humana Inc.*

**CERTIFICATE OF SERVICE**

This is to certify that a true and accurate copy of the foregoing was served on this 28th day of March, 2016 upon counsel of record, via this Court's electronic filing system.

*/s/ Pierre H. Bergeron*
Pierre H. Bergeron