### UNITED STATES DISTRICT COURT
### FOR THE WESTERN DISTRICT OF KENTUCKY
### LOUISVILLE DIVISION

| | |
|---|---|
| EXACT SCIENCES CORPORATION; and EXACT SCIENCES LABORATORIES, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> HUMANA, INC., <br><br> Defendant. | Civil Action No. 3:16-cv-58-JHM <br><br> **FIRST AMENDED COMPLAINT AND JURY DEMAND** |

Plaintiffs, Exact Sciences Corporation ("Exact Sciences") and Exact Sciences Laboratories, LLC ("Exact Labs") (collectively, "Exact" or "Plaintiffs"), file this First Amended Complaint and Jury Demand against Defendant, Humana, Inc. ("Humana" or "Defendant") and state as follows:

## INTRODUCTION

1.     *Humana has admitted the efficacy of Exact's proprietary colorectal cancer screening test, Cologuard®, and praised the product in comments submitted to the Centers for Medicare and Medicaid Services, stating that "Cologuard represents a major advancement in colorectal cancer screening quality...."  Inexplicably, however, Humana continues to improperly engage in a pattern and practice of denying benefits and refusing to pay Exact for the costs of performing Cologuard®, and, thus, has compelled Exact to file this First Amended Complaint.*

2.     Just last week, the United States Preventative Services Task Force ("USPSTF"), "made up of 16 volunteer members who are nationally recognized experts in prevention, evidence-based medicine, and primary care," gave colorectal cancer screening for ages 50 to 75

1

an "A" and listed Cologuard® as a recognized screening method.[1]  The USPSTF is just the latest of many preventative medicine experts to include Cologuard® in its recommendations over the past several years.

3.      Yet, since at least October 2014, and continuing through the present, Humana has improperly and illegally denied, underpaid, or ignored 2,084 Cologuard® claims, and counting, under commercial plans, Medicare Advantage plans, and otherwise, totaling $1,041,303.55, and counting.

4.      Humana provides healthcare insurance, administration, and/or benefits to policyholders or plan participants pursuant to a variety of healthcare benefit plans and policies of insurance, including employer-sponsored benefit plans, government-sponsored benefit plans, and individual health benefit plans (the "Plans").

5.      As shown further below, Humana has violated its duties under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq*., and state law.  In particular, the laws of many states in which Humana writes plans, detailed further below, specifically require insurers such as Humana to cover costs for colorectal cancer screening tests recommended by the American Cancer Society ("ACS") or otherwise in accordance with accepted medical practice guidelines for colorectal screening, like Cologuard® (the "Coverage Mandates").  *Humana has publicly acknowledged the existence of state coverage mandates that cover Cologuard®.*  Nevertheless, Humana has violated these laws, *inter alia*, by failing and refusing to pay Exact promptly and in full for the tests that Exact has performed for patients covered by the Plans provided or administered by Humana ("Humana Subscribers").

---

[1] *See* http://www.uspreventiveservicestaskforce.org/Page/Document/RecommendationStatementFinal/colorectal-cancer-screening2#tab.

6.     Since October 2014, Exact has performed thousands of Cologuard® tests for Humana Subscribers located in at least 45 different states, plus Washington D.C., and, accordingly, billed Humana in excess of a million dollars for the medical services provided.

7.     Humana has denied or underpaid 2,084 these claims, and counting, for various reasons including, but not limited to its contention that Cologuard® is excluded as "Experimental or Investigational."  Attached hereto at Exhibit A is a spreadsheet detailing all of the claims at issue in this action including diagnosis codes, the name of the health provider, attending doctor, bill state, day of date of service, policy type, super payor name, payor name, date of original claim submission, bill price, total insurance payment, and claim status.

8.     In the midst of these denials and underpayments, the Centers for Medicare and Medicaid Services ("CMS") published comments made by various health providers and insurance companies in connection with proposed regulations related to "CMS Star Ratings for 2017 and Beyond."

9.     Humana was one of the commentators who touted the efficacy of Cologuard®.  In Humana's comments to CMS, referred to herein as "Humana's Admission," Humana stated, among other things, that Humana "recommends that CMS recognize Cologuard®;" the American Cancer Society ("ACS") and American College of Gastroenterology ("ACG") both include Cologuard® in their guidelines; "[t]here are at least 17 states that require coverage of Cologuard through state mandated legislation;" and "Cologuard is superior to the FIT test at detecting both cancer and pre-cancerous lesions."  These are powerful admissions against Humana's interests in this action.

10.     Despite the positive representations and admissions contained in Humana's Admission to CMS about Cologuard®, as well as Humana's acknowledgment that at least 17

states mandate coverage, Humana continues improperly, illegally, and disingenuously, to engage

in a pattern and practice of excluding Cologuard® under its commercial plans as ineffective and,

according to Humana, "Experimental or Investigational" as it defines those terms under its Plans.

Humana thus has refused to reimburse Exact as required under applicable law and terms of the

Plans nationwide, including in Coverage Mandate States.

11.     Moreover, Humana has not stopped at wrongfully denying coverage for

Cologuard®.  Humana also has made false representations about Cologuard® to providers and

Humana Subscribers in an effort to discourage them from prescribing or using Cologuard®.  For

example, Humana distributed a flier falsely informing medical providers that Cologuard® is

ineffective and further stating that "Cologuard™ is not covered under Humana's commercial

plans" (emphasis in original).  Humana distributed this notice to physicians located in Kentucky

and, potentially, every other state with a colorectal cancer screening mandate, including

Alabama, Alaska, Arkansas, California, Colorado, Connecticut, Delaware, Georgia, Hawaii,

Illinois, Indiana, Louisiana, Maine, Maryland, Minnesota, Missouri, Nebraska, Nevada, New

Jersey, New Mexico, North Carolina, Oklahoma, Oregon, Pennsylvania, Rhode Island,

Tennessee, Texas, Vermont, Virginia, Washington, Wisconsin, and Wyoming, as well as

Washington, D.C. and, potentially, other states (together with Kentucky, the "Mandate States").

12.     Humana's contention in its physician flier, along with the contentions it has made

in various other communications to Humana Subscribers and medical providers described more

fully herein, are false.  In Kentucky and the other Mandate States, Humana is required by law to

cover Cologuard® and, therefore, Humana has no choice but to cover Cologuard® under

commercial plans in those states.  Moreover, and contrary to Humana's contentions in these

communications, Cologuard® is effective, has been approved by the U.S. Food and Drug

Administration ("FDA"), and CMS following an extensive clinical trial, and has been included in guidelines released by the ACS, the United States Preventative Services Task Force ("USPSTF"), and other organizations.  It is a safe and non-invasive colorectal cancer stool DNA ("sDNA") screening examination.

13.     Humana's wholesale refusal to provide coverage for Cologuard® is in clear violation of state and federal law, as well as Humana's Plans, and has caused Exact to sustain substantial damages.  If Humana's conduct is allowed to continue, it threatens irreparable harm to Exact as well as the patients who depend upon the test that Exact provides.

## PARTIES, JURISDICTION AND VENUE

14.     Plaintiff Exact Sciences is a corporation organized under the laws of the State of Delaware, with its principal place of business located at 441 Charmany Drive, Madison, Wisconsin 53719.

15.     Plaintiff Exact Labs is a limited liability company organized under the laws of the State of Delaware, with its principal place of business located at 145 East Badger Road, Madison, Wisconsin 53713.  Exact Labs is a wholly owned subsidiary of Exact Sciences.

16.     Defendant Humana is a corporation organized under the laws of the State of Delaware, with its principal place of business in this District located at 500 West Main Street, Louisville, Kentucky 40202.

17.     This Court has personal jurisdiction over Humana in this action as Humana operates, conducts, engages in, does business in, and has committed tortious acts within the State of Kentucky; and Humana engages in substantial and not isolated activities within Kentucky.

18.     This Court also has personal jurisdiction over Humana because, at all times material hereto, Humana purposefully carried on one or more businesses or business ventures in

this judicial District, operating as a licensed health insurer; the requisite nexus exists between the business(es) and this action; and Humana engaged in substantial and not isolated activity within this District.

19.     This Court also has jurisdiction over the subject matter of this action pursuant to (i) 28 U.S.C. § 1331 and 29 U.S.C. §1132(e)(1),  as this is a civil action, the claims asserted include ERISA claims and, therefore, this suit arises under the Constitution, laws, or treaties of the United States; and (ii) 28 U.S.C. §1367, as Exact's non-ERISA state law claims are supplemental to its Federal claims.

20.     Venue is proper in this District pursuant to (i) 28 U.S.C. § 1391(b)(2), because a substantial portion of the violations alleged herein either occurred here or were directed towards Exact in this District, and events giving rise to the Complaint occurred in this District; and (ii) 29 U.S.C. § 1132(e)(2) because a substantial portion of the insurance and/or benefits plans at issue in this case are administered in this District.

## BACKGROUND AND RELEVANT FACTS

**A.     Cologuard® is Tested and Proven Effective; Cologuard® is Not "Experimental or Investigational"**

21.     Cologuard® is a non-invasive colorectal cancer sDNA screening examination.

22.     Every day the lining of the colon naturally sheds cells.  If a patient has cancer or precancer in his or her colon, abnormal cells are shed into the colon, along with normal cells, where they are picked up by stool as it passes through the colon.

23.     Cologuard® uses advanced sDNA technology to find elevated levels of altered DNA in these abnormal cells, as well as a fecal immunochemical test to find elevated levels of hemoglobin in these abnormal cells, which could be associated with cancer or precancer.

24.     Exact Sciences developed Cologuard® along with researchers at the Mayo Clinic.

25.     In its pivotal clinical study, the over 10,000 subject Multi-Target Colorectal Cancer Screening Test for the Detection of Colorectal Advanced Adenomatous Polyps and Cancer ("DeeP-C") Study, Cologuard® demonstrated sensitivity at 92% of that seen with colonoscopy in detecting colorectal cancer, and it demonstrated sensitivity significantly greater than that seen for the fecal immunochemical test (FIT) in detecting colorectal cancer and advanced adenomas (AAs).

26.     The Deep-C study results were published in the *New England Journal of Medicine* in April, 2014.

27.     Cologuard's sensitivity and specificity results, as demonstrated by the Deep-C study, have been corroborated in a subsequent study involving over 600 Alaska natives.

28.     Cologuard received premarket approval ("PMA") from the FDA on August 11, 2014.

29.     Cologuard® was the first DNA screening test for colorectal cancer approved by the U.S. Food and Drug Administration ("FDA").

30.     Effective October 9, 2014, CMS extended coverage to Cologuard across the Medicare Program (Traditional Medicare (Part B) and Medicare Advantage (MA) health plans) by the National Coverage Determination for Colorectal Cancer Screening Tests (210.3).

31.     Cologuard is the first medical product successfully to complete the rigorous joint FDA- CMS parallel review process.

32.     Cologuard is also the only multi-target sDNA screening test for colorectal cancer.

33.     Cologuard® is a proprietary test provided by Exact Labs, exclusively processed at Exact Labs, and not available through any other laboratory.

34.     Cologuard® is a sole-sourced test; there are no other labs that offer a comparable sDNA test for colorectal cancer screening.

35.     Because of the compelling DeeP-C Study and Alaska Native study results and the well-known rigor of the PMA process, the analytical validity, clinical validity and clinical utility of Cologuard® have been well documented, as acknowledged in Humana's Admission.

36.     Numerous commercial health plans have extended coverage to Cologuard® as the data describing its performance compares well with technology assessment criteria and conditions for coverage under commercial health plans.

37.     As a result, at seventeen months following FDA approval, Cologuard® has achieved a broad coverage footprint of over 110 million Americans in the Medicare program and commercial health plans.

38.     Moreover, the ACS and AGC both specify sDNA tests and Cologuard® in their current guidelines for colorectal screening.[2]

39.     Specifically, the ACS guidelines state that "[b]eginning at age 50, people at average risk with no symptoms should follow one of the testing options below: …Stool DNA test (sDNA), every 3 years."

40.     As to sDNA tests, the ACS endorses Cologuard®™ as "the test currently available" in its recommendations.

---

[2] *See* http://www.cancer.org/healthy/informationforhealthcareprofessionals/colonmdclinicansinformationsource/colorectalcancerscreeningandsurveillanceguidelines/index; http://www.cancer.org/cancer/colonandrectumcancer/moreinformation/colonandrectumcancerearlydetection/colorectal-cancer-early-detection-acs-recommendations; http://www.cancer.org/cancer/colonandrectumcancer/moreinformation/colonandrectumcancerearlydetection/colorectal-cancer-early-detection-screening-tests-used; and http://gi.org/national-affairs/legislative-affairs/acg-this-week-national-affairs-news/this-week-september-13-2014/.

41.     Even independent external reviewers have recognized that Cologuard® is not Experimental or Investigational.

42.     By notice dated March 7, 2016, National Medical Reviews ("NMR") of Southampton, Pennsylvania, reversed Humana's coverage denial to a Georgia subscriber finding that Humana's "decision to deny coverage for the requested Cologuard…as experimental or investigative was not appropriate."  Attached hereto at Exhibit B is a redacted copy of NMR's decision.

43.     Upon information and belief, other independent reviewers have similarly rejected Humana's contention that Cologuard® is experimental and investigational.[3]

44.     More recently, the USPSTF published its final guidelines for colorectal cancer screening, listing Cologuard® within the recommendations as one of several equally positioned "A" rated strategies.[4]

45.     The recommendations provide the first update to colon cancer screening guidelines in eight years by the USPSTF and the USPSTF has brought the healthcare community up to speed by reflecting Cologuard as an innovative colon cancer screening option.

46.     In a press release, the ACS commented that "[t]hese guidelines reinforce the notion that with several test options, the best test is the one that you get."[5]

47.     Moreover, the Affordable Care Act and implementing regulations require all non-grandfathered group health plans and health insurance coverage offered in the individual or

---

[3] Allegations "upon information and belief" are those that Exact has a good faith belief are true and the facts to establish such truth are in Humana's possession; Humana may also refute such facts in its Answer to this First Amended Complaint.

[4] *See* http://jama.jamanetwork.com/article.aspx?articleid=2529486.

[5] *See* http://pressroom.cancer.org/uspstfcoloncancerscreeningguideline?_ga=1.130858063.157287204.1457723844.

group market to provide benefits, and prohibit the imposition of cost-sharing requirements, for evidenced-based items or services that have in effect a rating of "A" or "B" in the current recommendations of the United States Preventive Services Task Force.  *See* 42 U.S.C. § 300gg–13; 26 CFR 54.9815-2713, 29 C.F.R. §2590.715-2713; 45 CFR 147.130.

48.     Thus, Cologuard® is not "Experimental or Investigational" as those terms are defined in any Plan.

**B.     Humana's Admission and Public Recognition of the Effectiveness of Cologuard®**

49.     What is more, Humana itself has explicitly recognized the effectiveness of Cologuard® in published comments it filed with the CMS in connection with proposed regulations related to CMS Star Ratings for 2017 and Beyond.

50.     Specifically, on February 19, 2016, CMS published comments regarding a number of services, including Cologuard®, submitted by various entities, including Humana.  In Humana's comment, referred to herein as "Humana's Admission," Humana touted the efficacy of Cologuard®, stating:

> Humana believes this to be a very important measure and one that is needed to keep to incentivize provider and patient compliance.  Humana also recommends that CMS recognize Cologuard.  After launching an FDA/CMS parallel review of this test and subsequent FDA approval and CMS NCD with payment established every 3 years, Medicare Advantage plans are required to cover Cologuard for their patients, yet they are not receiving appropriate HEDIS/STARS credit for Cologuard.  Cologuard is included in the guidelines for colorectal cancer screening of the American Cancer Society (ACS) with indication for use every three years as well as included in the guidelines of the American College of Gastroenterology (ACG) for use every three years.  Cologuard was also included in the recent draft guideline published by USPSTF as an alternative test. There are at least 17 states that require coverage of Cologuard through state mandated legislation.  Health plans are in a difficult position of not receiving appropriate quality credit for performing this screening.  Cologuard represents a major advancement in colorectal cancer screening quality and is addressing vexing compliance issues.  As shown in a 10,000-patient study, Cologuard is superior to the FIT test at detecting

both cancer and pre-cancerous lesions.  In an important second study published in October in Mayo Clinic Proceedings, Cologuard's performance advantage was even greater.  Cologuard is the only colorectal cancer screening test that is FDA-approved and is subject to the FDA's highest level of quality oversight, is performed and provided uniformly nationwide so all patients receive the same quality test, and is supported by an embedded nationwide patient navigation system to help clinicians and patients achieve successful screening.

51.     Humana's Admission confirms that Humana does not actually believe that Cologuard® is experimental or investigational or that preauthorization for Cologuard® is required.

**C.     Humana Subscribers Assign their Insurance Benefits to Exact**

52.     As noted above, Exact has provided medically necessary tests to many Humana Subscribers who obtained medical insurance from Humana under various Plans in Coverage Mandate States and nationwide.

53.     In Coverage Mandate States, regardless of Plan language, Humana must provide coverage for colorectal cancer screening to all Humana Subscribers in Coverage Mandate States.

54.     In addition, upon information and belief, Cologuard® specifically meets the requirements for coverage under the terms of the applicable Plans.

55.     Upon information and belief, all Humana Plans provide coverage for colorectal cancer screening tests or examinations, unless the test or examination fits within the definition of "Experimental or Investigational" under the terms of the applicable Plan.

56.     As detailed above, Cologuard® is not and cannot be deemed "Experimental or Investigational" as those terms are defined in any Plan.

57.     Each patient prescribed Cologuard®, including each Humana Subscriber, provides Exact with a "Patient Assignment of Benefits Notice (AOB)" (the "AoB").

58.     In the AoB, Humana Subscribers agree to be financially responsible for the costs of the Cologuard® test that Exact provides, and they further assign to Exact their right to benefits under the applicable Plans for the test Exact provides.  Exact has used different AoB language from time to time.

59.     An Exact AoB signed by certain patients includes the following assignment language:

> ***Authorization to assign benefits, accept financial responsibility, and disclose health records:*** *I authorize Exact Sciences Laboratories to bill my insurance/health plan and furnish them with my Cologuard® order information, my test results, or other information requested for reimbursement, to appeal any reimbursement denial, and authorize all reimbursements to be paid directly to the laboratory in consideration for services performed.  I understand that I am responsible for any amount not paid, including amounts for non-covered services.*

60.     An Exact AoB signed by certain patients includes the following assignment language:

> I authorize Exact Sciences Laboratories (Exact) to bill my insurance/health plan & furnish them with my Cologuard order information, test results, or other information requested for reimbursement.  I assign all rights & benefits under my insurance plans to Exact & authorize Exact to appeal & contest any reimbursement denial, including in any administrative or civil proceedings necessary to pursue reimbursement.  I authorize all reimbursements to be paid directly to the laboratory in consideration for services performed.  I understand that I am responsible for any amount not paid, including amounts for non-covered services determined by my plan to be provided by an out-of-network provider.

61.     An Exact AoB signed by certain patients includes the following assignment language:

> I authorize Exact Sciences Laboratories (Exact) to bill my insurance/health plan & furnish them with my Cologuard order information, test results, or other information requested for reimbursement. I irrevocably assign all rights & benefits under any insurance policy(ies) or employee benefit plan(s) under which I am insured or covered as a participant, beneficiary, dependent, or otherwise

(the "Insurance Benefits") to Exact. THIS IS A DIRECT ASSIGNMENT TO EXACT OF ANY AND ALL OF MY RIGHTS TO RECEIVE THE INSURANCE BENEFITS. This irrevocable assignment and transfer grants Exact an independent right of recovery against any third-party that provides, or is responsible for, Insurance Benefits.

This assignment of benefits fully and completely encompasses any and all rights and legal claims I may have, under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, et seq., or otherwise, under any applicable plan or policy of insurance to receive the Insurance Benefits. These legal rights and legal claims include, but are not limited to: (1) my rights to make a claim for and/or to appeal any denial of, as applicable, the Insurance Benefits on my behalf; (2) my rights to pursue legal action against the applicable third-party payer for unpaid benefits or for violating any contractual, statutory, legal or equitable duties to me, including, but not limited to, any and all claims I may have for unpaid benefits, breach of contract, breach of the covenant of good faith and fair dealing, breach of fiduciary duty, denial of a full and fair review, quantum meruit, or unjust enrichment; (3) my rights to request and obtain documents and information, including, but not limited to, any and all plan documents, insurance policies, summary plan descriptions, annual reports, bargaining agreements, contracts or other instruments under which the Insurance Benefits are established or operated and/or other documentation required to be disclosed to me under ERISA § 104(b)(4) from any applicable third-party responsible for providing Insurance Benefits including, but not limited to, the plan administrator and/or insurer for such Insurance Benefits, as applicable; and (4) my rights to file a complaint with any applicable federal, state, or local regulatory agency against any applicable third-party responsible for providing Insurance Benefits.   In this regard, I hereby designate Exact, or any agent acting on its behalf, as my designated authorized representative(s) under ERISA, and further authorize Exact, as applicable, to exercise any and all rights and legal claims I may have under ERISA including, but not limited to, the legal rights and claims specified above.

I further authorize and direct all insurers and/or plan administrators who may have responsibility for payment of my medical bills, and/or their duly authorized delegates, as applicable, to pay directly to Exact all Insurance Benefits to which I am entitled for services rendered. I authorize and direct any person or corporation having notice of this assignment to pay directly to Exact all Insurance Benefits, liability or other insurance or third-party benefits to which I am or may be entitled related to my care up to the amount necessary to discharge my indebtedness to Exact.

I further agree to pay Exact for charges not covered by this assignment of benefits, including, but not limited to, any applicable health insurance deductibles, copayments, coinsurance or other cost-sharing amounts under

any employee benefit plan(s) or policy(ies) of insurance; and charges not covered by any employee benefit plan(s) or policy(ies) of insurance.

I further agree that this assignment will not be withdrawn or voided at any time until my accounts are paid in full.

I hereby appoint Exact and/or any agent acting on its behalf as my authorized representative(s) to pursue any claims, penalties, and administrative and/or legal remedies on my behalf for collection against any responsible payer or third party liability carrier of any and all benefits due to me for the payment of charges associated with my treatment. If any part of this assignment in violation of any applicable statute or law, or otherwise deemed void as against public policy, I intend that all other provisions of this assignment remain enforceable.

62.     For every claim at issue in this case, the beneficiary provided an AoB in a form

identical to or substantially the same as those referenced in the preceding paragraphs.

63.     As set forth below, Humana has failed and refused to provide insurance coverage

for Cologuard® tests provided to Humana Subscribers.

**D.      Coverage Mandates**

64.     Kentucky Revised Statutes §304.17A-257 (the "Kentucky Mandate") is titled

"Coverage under health benefit plan for colorectal cancer examinations and laboratory tests."

65.     The Kentucky Legislative Record Online describes the Kentucky Mandate as

"AN ACT relating to removing barriers to colorectal cancer screening."[6]

66.     The Kentucky Mandate provides:

(1)   A health benefit plan issued or renewed on or after January 1, 2016,[7] shall provide coverage for all colorectal cancer examinations and laboratory tests specified in current American Cancer Society guidelines for complete colorectal cancer screening of asymptomatic individuals as follows:

---

[6] *See* http://www.lrc.ky.gov/record/15rs/HB69.htm.

[7] The Kentucky Legislature revised the Kentucky Mandate in December of 2015, effective January 1, 2016.  However, with the exception of allowing for a carrier to require deductibles or coinsurance in some situations, the predecessor mandate was substantially the same, was effective from January 1, 2009 through January 1, 2016, and applies to Plans issued or renewed as of January 1, 2009.

     (a)   Coverage or benefits shall be provided for all colorectal screening examinations and tests that are administered at a frequency identified in the most recent version of the American Cancer Society guidelines for complete colorectal cancer screening; and

     (b)   The covered individual shall be:

          1.   Fifty (50) years of age or older; or

          2.   Less than fifty (50) years of age and at high risk for colorectal cancer according to current colorectal cancer screening guidelines of the American Cancer Society.

  (2)   Coverage under this section shall not be subject to a deductible or coinsurance for services received from participating providers under the health benefit plan.

67.     As set forth above, the ACS specifies Cologuard® in its current guidelines as a recommended colorectal cancer screening examination and thus the Kentucky Mandate applies.

68.     Despite the clear application of the Kentucky Mandate to Cologuard®, and Humana's Admission which acknowledges such a mandate, Humana has adopted a policy of non-coverage for Cologuard® and, to date, wrongfully denied, underpaid, or ignored 204 Cologuard® claims totaling $113,453.21 in Kentucky.

69.     In addition to Kentucky, there are many other Coverage Mandate States including:  Alabama;[8] Alaska;[9] Arkansas;[10] California;[11] Colorado;[12] Connecticut;[13] Delaware;[14] Georgia;[15] Hawaii;[16] Illinois;[17] Indiana;[18] Louisiana;[19] Maine;[20] Maryland;[21] Minnesota;[22]

---

[8] *See* Ala. Code § 27-57-2.
[9] *See* Alaska Stat. § 21.42.377.
[10] *See* Ark. Code Ann. § 23-79-1202.
[11] *See* Cal. Health & Safety Code § 1367.665.
[12] *See* Colo. Rev. Stat. Ann. § 10-16-104.
[13] *See* Conn. Gen. Stat. Ann. § 38a-492k; § 38a-518k.
[14] *See* 18 Del. Code Ann. § 3346; § 3562.
[15] *See* GA Code §33-24-56.3.
[16] *See* Haw. Rev. Stat. § 431:10A-122.
[17] *See* 215 ILCS 5/356x.
[18] *See* Ind. Code §27-8-14.8-3.
[19] *See* La. Rev. Stat. Ann. §22:1029.
[20] *See* 24-A Me. Rev. Stat. Ann. § 2763; § 2847-N; § 4254.

Missouri;[23] Nebraska;[24] New Jersey;[25] New Mexico;[26] Nebraska; Nevada;[27] New Jersey;[28] North Carolina;[29] Oklahoma;[30] Oregon;[31] Pennsylvania, [32] Rhode Island;[33] Tennessee;[34] Texas;[35] Vermont; [36] Virginia; [37] Washington;[38]Washington, D.C.;[39] Wisconsin; [40] and Wyoming.[41] Attached hereto at Exhibit C are true and correct copies of these Coverage Mandate statutes, along with the Kentucky Mandate.

70.     Despite these Coverage Mandates, and Humana's acknowledgement of such mandates in Humana's Admission, Humana has, upon information and belief, adopted a pattern and practice of denying coverage for Cologuard® in the Coverage Mandate States.

71.     To date, Humana has denied, underpaid, or ignored 1,207 Cologuard® claims totaling $596,712.62 in Coverage Mandate States other than Kentucky.

---

[21] *See* Md. Code Ann., Ins. § 15-837.
[22] *See* Minn. Stat. Ann. § 62A.30.
[23] *See* Mo. Rev. Stat. §376.1250.
[24] *See* Neb. Rev. Stat. § 44-7,102.
[25] *See* N.J. Stat. Ann. 17B:26-2.1u; 17:48-6y;  17:48A-7x; 17:48E-35.23; 17B:27-46.1y; 17B:27A-7.7; 17B:27A-19.9; 26:2J-4.24.
[26]  *See* N.M. Stat Ann § 59A-22-47; § 59A-23-7.6; § 59A-46-48; § 59A-47-43.
[27] *See* Nev. Rev. Stat. §689A-04042; 689B-0367; 695B-1907; 695C-1731; and 695G-168.
[28] *See* N.J. Stat. Ann. 17B:26-2.1u; 17:48-6y; 17:48A-7x; 17:48E-35.23; 17B:27-46.1y; 17B:27A-7.7; 17B:27A-19.9; 26:2J-4.24.
[29] *See* N.C. Gen. Stat. §58-3-179.
[30] *See* 36 Okla. Stat. §6060.8a.
[31] *See* Or. Rev. Stat § 743A.124.
[32] *See* 40 Pa. Stat. Ann.  § 764i.
[33] *See* R.I. Gen. Laws § 27-18-58;  § 27-19-49; § 27-41-60.
[34] *See* Tenn. Code Ann. § 56-7-2363.
[35] *See* Tex. Ins. Code §1363.003 and Texas Department of Insurance Commissioner's Bulletin # B000609.
[36] *See* 8 Vt. Stat. Ann. § 4100g.
[37]  *See* Va. Code Ann. § 38.2-3418.7:1.
[38] *See* Wash. Rev. Code 48.43.043
[39]  *See* D.C. Code § 31-2931.
[40] *See* Wis. Stat. Ann. § 632.895 and Wis. Adm. Code § Ins 3.35.
[41] *See* Wyo. Stat. Ann. § 26-19-107.

E.     **Humana's Illegal Policy and Its Misinforming of Medical Providers and Humana Subscribers**

72.     Humana has issued a notification flier titled "Colorectal Cancer Screening Cologuard®™ Quality-Compliance Issue" (the "Flier").  Attached hereto at Exhibit D is a redacted copy of the Flier.

73.     In the Flier, Humana sets forth its policy that Cologuard® is ineffective and that "Cologuard®™ is not covered under Humana's commercial plans." (emphasis in original).

74.     This could be Humana's policy nationwide since the Flier is not state-specific.

75.     The statements in the Flier are false, misleading, and contrary to applicable law in Coverage Mandate States where Humana is legally required to cover Cologuard®.

76.     Humana has sent the Flier directly to its in-network healthcare providers in Kentucky.

77.     Humana may have sent the Flier directly to other healthcare providers nationwide.

78.     Upon information and belief, medical providers who received Humana's false information, by way of the Flier or otherwise, have ceased to prescribe Cologuard®.

79.     By letter dated January 21, 2016, counsel for Exact sent a "Cease and Desist Notice" (the "First Cease and Desist Letter") to Humana demanding that Humana (i) immediately cease and desist distributing the Flier, (ii) immediately notify any provider to whom it sent the Flier that Humana is required to cover Cologuard® under applicable law and that it retracts the Flier; and (iii) certify to Exact that Humana has complied with this demand. Attached hereto at Exhibit E is a true and correct copy of the First Cease and Desist Letter.

80.     By letter dated January 29, 2016, counsel for Humana replied to the Cease and Desist letter stating that (i) Humana believes it did not distribute the Flier beyond Kentucky; (ii) any miscommunication in the Flier was unintentional; (iii) Humana has ceased using the

17

"version" of the Flier described herein; (iv) Humana will "reprocess" Cologuard® claims it has

denied since January 1, 2016; and (v) Humana "will attempt to determine which Kentucky

physicians received the flier and contact them if any clarification is needed."  Attached hereto at

Exhibit F is a true and correct copy of Humana's written response to the First Cease and Desist

Letter.

81.      Humana also states that it will investigate and "evaluate whether any

modification of [its policies] is warranted."

82.      However, Humana failed to address the many claims it wrongfully denied prior to

January 1, 2016 in Kentucky and the other Mandate States.

83.      Likewise, Humana offered no assurances that it would rectify the situation and

comply with the Coverage Mandates in the future.

84.      Moreover, in the months since sending its January 29 letter, Humana has provided

no further information to Exact stating that it had even done what it promised to do in the

January 29 letter - namely, determined which Kentucky physicians received the flier, whether

Humana contacted these physicians to clarify Humana's position, or investigated and evaluated

whether any modification of its policies was warranted.

85.      On or about March 10, 2016, Exact became aware that Humana had, on at least

one occasion, issued a denial of benefits for Cologuard with "Explanation Code 072," which

states, in relevant part, "a physician panel has determined that there is insufficient evidence to

support the *safety* and efficacy of this service" (emphasis added).  Attached hereto at Exhibit G is

letter attaching a redacted copy of this denial.

86.      In response, by letter dated March 11, 2016 (the "Second Cease and Desist

Letter"), Exact demanded that Humana immediately cease and desist using Explanation Code

072 in its current form or otherwise suggesting in any way that Cologuard is unsafe.  Attached

hereto at Exhibit G is a true and correct copy of the Second Cease and Desist Letter.

87.     Exact demanded that Humana immediately notify any recipients of

communications including Explanation Code 072 and retract its prior statements as to the safety

and efficacy of Cologuard® and certify to Exact that Humana has complied with this demand.

88.     Humana ignored the Second Cease and Desist Letter.

89.     Humana's unlawful conduct continued thereafter.

90.     On April 27, 2016, Exact learned that Humana had advised a provider not to refer

patients to Exact Sciences Laboratories, LLC because it is a "nonparticipating lab" and

encouraged the provider to use "Humana-participating laboratories," listed at

Humana.com/providers, instead.  Attached hereto at Exhibit H is a redacted coy of this

"nonparticipating lab" notice.

91.     However, since Exact Sciences Laboratories is the only laboratory that provides

the Cologuard® test, Humana's communication thus serves no purpose other than to discourage

providers from prescribing Cologuard, in clear violation of the coverage mandate of North

Carolina, N.C. Gen. Stat. § 58-3-179, where this physician is located.

92.     By letter dated April 27, 2016, Exact sent Humana a "Third Cease and Desist

Letter," demanding that Humana cease and desist in this unlawful conduct, immediately notify

any recipients of communications discouraging prescribing Cologuard®, and certify to Exact

that Humana has complied with this demand.  Attached hereto at Exhibit I is a true and correct

copy of the Third Cease and Desist Letter.

93.     Exact also informed Humana that it had run afoul of North Carolina's coverage

mandate, and potentially the mandates of other Coverage Mandate States.

94.     Exact also has been receiving refund requests from Humana for benefits paid under Medicare Advantage Plans based on a purported lack of preauthorization.

95.     However, Humana has no such preauthorization code.

96.     Moreover, CMS requires coverage for Cologuard® under MA plans for average risk, asymptomatic adults, age 50 to 85 years, once every three years.

97.     Thus, if this criteria is satisfied, as it is for the patients at issue in Humana's refund demands, preauthorization is not a basis for denial of benefits or a refund for benefits already paid.  MA plans cover Cologuard®, period.

98.     Exact addressed this issue in the Third Cease and Desist Letter, which Humana has thus far ignored.

99.     Humana's continued intransigence has now gone beyond merely wrongfully denying coverage and risen to the level of an intentional or tortious interference with Exact's business relations and prospective economic advantage.

**F.      The Claims at Issue, the Wrongful Denials, and the Preauthorization Pretext**

100.    Since October 2014, Exact performed Cologuard® tests for Humana Subscribers and accordingly billed Humana for these medical tests; Exact's billed charges to Humana reflect the usual, customary, and reasonable rates for the medical testing provided at Exact.

101.    Upon information and belief, Humana exercises discretionary authority or control of the administration of the Plans and/or controls the disposition of benefits under the Plans.

102.    Humana has denied coverage for or underpaid 2,084 of these claims, for a total of $1,041,303.55, on various grounds including that Cologuard® is "Experimental or Investigational" and that Exact failed to secure preauthorization before performing its tests.

103.    Pursuant to the settlement of a large provider class action, Humana agreed to publish all procedure codes requiring preauthorization.  Specifically, the settlement agreement provides that:

> [Humana] shall post to its Provider Website not later than three (3) months after the Final Order Date those services or supplies for which Precertification is routinely required for its products, and [Humana] shall update such posting to the extent the services or supplies for which Precertification is routinely required changes.

104.    Despite the fact that the procedure code for Cologuard® is not on Humana's published preauthorization list, Humana nonetheless is denying claims for lack of preauthorization for Cologuard® because the test was not pre-authorized with Humana by the provider or patient.

105.    Moreover, preauthorization is irrelevant under the Coverage Mandates.

**E.      Exact has Exhausted all Known Internal Appeals Procedures**

106.    Although Humana has never supplied to Exact the terms of the actual Plans covering the Humana Subscribers, upon information and belief, Exact has repeatedly and in good faith exhausted all known available appeals avenues under those Plans in an effort to convince Humana to reimburse Exact properly on its claims for Cologuard® tests that Exact provided to the Humana Subscribers.

107.    Exact has submitted 1,382 internal appeals and Humana has granted only 514 of them.  Humana has also underpaid claims and still owes Exact at least $128,471.55 for those claims.

108.    In the initial Complaint, Humana alleged Humana had denied 528 out of 1,053 internal appeals.

109.    Humana contended in its Motion to Dismiss that the large number of reversals was an indication that the appeal process is working and not futile.

110.    However, over 90% of Humana's reversals were for benefits under Medicare Advantage policies, which by law *must* cover Cologuard®.

111.    In its First Cease and Desist Letter, Exact also demanded that Humana reverse its previous benefit denials, promptly pay all previously submitted Cologuard® claims, and conform its medical policies and claims systems programming so that Humana's entire organization recognizes its obligation to pay for Cologuard® as a covered service.

112.    As of the date of this Complaint, Humana has failed to comply in full with these demands, or the demands of any of the three cease and desist letters, or provide sufficient assurances that Humana would not repeat its conduct.

**F.    Further Exhaustion Efforts would be Futile**

113.    Upon information and belief, Humana's national policy for its commercial plans, as set forth in the Flier, is to exclude all Cologuard® claims.

114.    Humana has not responded to Exact's demands or otherwise given any indication that it is willing to reconsider its wrongful practices.

115.    As illustrated by the three cease and desist letters and other documents attached hereto, Humana has continued to encourage providers and Humana Subscribers not to prescribe or use Cologuard®.

116.    It is clear that Humana has adopted a pattern or practice of wrongfully denying Exact's claims, such that further exhaustion efforts would be futile.

*        *        *        *        *

117.    Humana's conduct has caused Exact to incur substantial damages and attorneys' fees and, if allowed to continue, threatens irreparable harm to Exact as well as the patients it tests, thus necessitating this action.

118.     This action was timely commenced well within five (5) years after Exact was notified by Humana that it was rejecting or dramatically underpaying Exact's claims for reimbursement for the services that Exact provided to Humana Subscribers, and otherwise within five (5) years after each of Exact's claims against Humana accrued.

## CAUSES OF ACTION

### COUNT ONE
### (Claim for ERISA Benefits)

119.     Plaintiff incorporates by reference all of the foregoing allegations as if set forth at length herein.

120.     Exact files this action pursuant to ERISA §502(a)(1)(B), 28 U.S.C. §1132, to recover benefits assigned to it by the participants or Humana Subscribers of an ERISA plan.

121.     Exact has provided Cologuard® tests to at least thousands of Humana Subscribers since October, 2014.

122.     These Humana Subscribers have assigned Exact the right to seek reimbursement from payors, "to appeal any reimbursement denial," and have "authorized all reimbursements to be paid directly to [Exact] in consideration for services performed."

123.     As assignee of the Humana Subscribers of the Humana Plans, Exact is entitled to recover benefits due to the Humana Subscribers and enforce the rights of the Humana Subscribers under the terms of the Humana Plans.  In particular, as assignee of the Plans, Exact is entitled to reimbursement under the ERISA-governed Plans for the Cologuard® tests provided to the Humana Subscribers.

124.     Upon information and belief, the Plans did not prohibit the Humana Subscribers from assigning their rights to benefits under the Plans to Exact, including the right of direct payment of benefits under the Plans to Exact.  To the contrary, upon information and belief, the

23

Plans expressly authorize the Humana Subscribers to assign their rights to benefits and their rights of direct payment of benefits under the Plans to providers like Exact.

125.    Moreover, to the extent that any of the Plans prohibited the assignment of benefits to Exact, Humana waived any purported anti-assignment provisions, ratified the assignment of benefits to Exact, and/or is estopped from using any purported anti-assignment provisions against Exact due to its course of dealing with Exact.

126.    And to the extent that the Plans prohibited the assignment of benefits to Exact, any such purported anti-assignment prohibitions are unenforceable as, among other things, contrary to public policy, as adhesion contracts, and/or due to a lack of privity with Exact.

127.    Upon information and belief, the Humana Plans require reimbursement of medical expenses incurred by Humana Subscribers at usual, customary, and reasonable rates.

128.    Humana is obligated to pay for medically necessary services, covered services, or covered benefits as defined under its Plans.

129.    Humana has breached the terms of the Plans by refusing to make reimbursements for charges covered by the Plans, in violation of ERISA 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B).

130.    As a result of, among other acts, Humana's numerous procedural and substantive violations of ERISA, any appeals are deemed exhausted or excused, and Exact is entitled to have this Court undertake a *de novo* review of the issues raised herein.

131.    Moreover, pursuant to 29 U.S.C. § 1132(a)(1)(B), Exact is entitled to recover unpaid benefits from Humana. Exact is also entitled to declaratory and injunctive relief to enforce the terms of the Plans and to clarify its right to future benefits under such plans, as well as attorneys' fees.

**COUNT TWO**
**(Violation of Fiduciary Duties of Loyalty and Due Care in Violation of ERISA)**

132.    Plaintiff incorporates by reference all of the foregoing allegations as if set forth at length herein.

133.    29 U.S.C. § 1132(a)(3) states that a civil action may be brought by "a participant, beneficiary, or fiduciary to (A) enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan."

134.    Humana is a fiduciary under ERISA, to the extent that the Plans are issued pursuant to an employee benefit plan and Humana:

      a.    exercises discretionary authority or discretionary control respecting the management of an employment benefit plan and the disposition of its assets; and

      b.    has discretionary authority in the administration of the Plan.

135.    As an ERISA fiduciary, Humana owed Exact a duty of care, defined as an obligation to act prudently, with the care, skill, prudence and diligence that a prudent fiduciary would use in the conduct of an enterprise of like character.  Further, as a fiduciary, Humana was required to ensure that it was acting in accordance with the documents and instruments governing the Plans, and in accordance with ERISA § 404(a)(l)(B) and (D), 29 U.S.C. § 1104(a)(l)(B) and (D).   In failing to act prudently, and in failing to act in accordance with the documents governing the Plans, Humana has violated their fiduciary duty of care.

136.    As a fiduciary, Humana also owed Exact a duty of loyalty, defined as an obligation to make decisions in the interest of its beneficiaries, and to avoid self-dealing or financial arrangements that benefit the fiduciary at the expense of members, in accordance

with ERISA § 404(a)(l)(A), 29 U.S.C. § 1104(a)(l)(A) and ERISA § 406, 29 U.S.C. § 1106. Thus, Humana could not make benefit determinations for the purpose of saving Humana money at the expense of the Humana Subscribers.

137.    Humana has violated its fiduciary duty of loyalty to Exact by, among other things, refusing to make reimbursements for Cologuard® tests, to its own advantage, at the expense of Humana Subscribers, and in direct contradiction to Humana's Admission.  In addition, Humana violated its fiduciary duty of loyalty by failing to inform Exact, as assignees of the Humana Subscribers, of material information, by misrepresenting requirements for reimbursement under the Plans.

138.    The Humana Subscribers described herein have assigned their rights under the Plans to Exact.

139.    As assignees of the Humana Subscribers, Exact is entitled to recover benefits due to the Humana Subscribers and enforce the rights of Humana Subscribers under the terms of the Plans and policies.

140.    Humana has violated their fiduciary duty of loyalty to Exact by, among other things:  refusing to cover Cologuard® tests; refusing to allow Exact any opportunity to negotiate coverage beyond the unduly burdensome terms it has wrongfully required in contravention of applicable law and Plan terms; and failing to inform Exact, as assignees of the Humana Subscribers, of material information.

141.    Exact has standing to pursue claims under ERISA as an assignee and authorized representative of the Humana Subscribers' claims.

142.    Exact is entitled to relief to remedy Humana's violation of its fiduciary duties under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), including declaratory and injunctive relief.

## COUNT THREE
### (Denial of Full and Fair Review in Violation of ERISA § 503)

143.    Exact incorporates by reference all of the foregoing allegations as if set forth at length herein.

144.    As an assignee and authorized representative of the Humana Subscribers' claims, Exact is entitled to receive protection under ERISA, including (a) a "full and fair review" of all claims denied by Humana; and (b) compliance by Humana with applicable claims procedure regulations.

145.    Although Humana is obligated to provide a "full and fair review" of denied claims pursuant to ERISA § 503, 29 U.S.C. § 1133 and applicable regulations, including 29 C.F.R. § 2560.503-1 and 29 C.F.R. § 2590.715-2719, Humana has failed to do so by, among other actions:  refusing to provide the specific reason or reasons for the denial of each of the claims; refusing to provide the specific plan provisions relied upon to support its denial; refusing to provide the specific rule, guideline or protocol relied upon in making the decision to deny claims; refusing to describe any additional material or information necessary to perfect a claim, such as the appropriate diagnosis/treatment code; refusing to notify the relevant parties that they are entitled to have, free of charge, all documents, records and other information relevant to the claims for benefits; refusing to provide a statement describing any voluntary appeals procedure available, or a description of all required information to be given in connection with that procedure; denying coverage based on a lack of preauthorization when the Plans require no such preauthorization as a condition to coverage; and denying coverage in direct contradiction to Humana's Admission.  By failing to comply with the ERISA claims procedures regulations, Humana failed to provide a reasonable claims procedure.

146.    Because Humana has failed to comply with the substantive and procedural requirements of ERISA, any administrative remedies are deemed exhausted pursuant to 29 C.F.R. § 2560.503-1(l) and 29 C.F.R. § 2590.715-2719(b)(2)(ii)(F)(1). Exhaustion is also excused because it would be futile to pursue administrative remedies, as Humana does not acknowledge any basis for its denials and thus offers no meaningful administrative process for challenging denials. Finally, exhaustion would be futile since Humana has adopted a clear policy of excluding coverage for Cologuard®.

147.    Exact has been harmed by Humana's failure to provide a full and fair review of appeals submitted under ERISA § 503, 29 U.S.C. § 1133, and by Humana's failures to disclose information relevant to appeals and to comply with applicable claims procedure regulations.

148.    Exact is entitled to relief under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), including declaratory and injunctive relief, to remedy Humana's failures to provide a full and fair review, to disclose information relevant to appeals, and to comply with applicable claims procedure regulations.

## COUNT FOUR
### (Violation of the Kentucky Mandate)

149.    Exact incorporates by reference all of the foregoing allegations as if set forth at length herein.

150.    Pursuant to the Kentucky Mandate, KRS §304.17A-257,

(1)    A health benefit plan issued or renewed on or after January 1, 2016, shall provide coverage for all colorectal cancer examinations and laboratory tests specified in current American Cancer Society guidelines for complete colorectal cancer screening of asymptomatic individuals as follows:

(a)    Coverage or benefits shall be provided for all colorectal screening examinations and tests that are administered at a frequency identified in the most recent version of the American Cancer Society guidelines

28

for complete colorectal cancer screening; and

 (b) The covered individual shall be:

  1. Fifty (50) years of age or older; or

  2. Less than fifty (50) years of age and at high risk for colorectal cancer according to current colorectal cancer screening guidelines of the American Cancer Society.

 (2) Coverage under this section shall not be subject to a deductible or coinsurance for services received from participating providers under the health benefit plan.

151. Humana has violated the Kentucky Mandate by adopting a policy of non-coverage for Cologuard® and by denying or underpaying, to date, 204 Cologuard® claims totaling at least $113,453.21 in Kentucky.

152. Pursuant to KRS §446.070 (Penalty no bar to civil recovery), "A person injured by the violation of any statute may recover from the offender such damages as he sustained by reason of the violation, although a penalty or forfeiture is imposed for such violation."

153. As a direct and proximate result of Humana's violation of the Kentucky Mandate, Exact has sustained and will continue to sustain in the future damages, and has been deprived and will continue to be deprived in the future of the compensation to which it is entitled to receive for providing covered tests discussed in this Complaint.

## COUNT FIVE
### (Declaratory Judgment)

154. Plaintiff incorporates by reference all of the foregoing allegations as if set forth at length herein.

155. This is a count for declaratory relief pursuant to 28 U.S.C. § 2201.

156. Pursuant to the Kentucky Mandate, KRS §304.17A-257, as well as the Coverage Mandates enacted by many other states including:  Alabama;[42] Alaska;[43] Arkansas;[44]

---

[42] *See* Ala. Code § 27-57-2.

California;[45] Colorado;[46] Connecticut;[47] Delaware;[48] Georgia;[49] Hawaii;[50] Illinois;[51] Indiana;[52]

Louisiana;[53] Maine;[54] Maryland;[55] Minnesota;[56] Missouri;[57] Nebraska;[58] New Jersey;[59] New

Mexico;[60] Nebraska; Nevada;[61] New Jersey;[62] North Carolina;[63] Oklahoma;[64] Oregon;[65]

Pennsylvania; [66] Rhode Island;[67] Tennessee;[68] Texas;[69] Vermont; [70] Virginia; [71]

Washington;[72]Washington, D.C.;[73] Wisconsin; [74] and Wyoming,[75] Humana must cover

Cologuard® tests.

---

[43] *See* Alaska Stat. § 21.42.377.
[44] *See* Ark. Code Ann. § 23-79-1202.
[45] *See* Cal. Health & Safety Code § 1367.665.
[46] *See* Colo. Rev. Stat. Ann. § 10-16-104.
[47] *See* Conn. Gen. Stat. Ann. § 38a-492k; § 38a-518k.
[48] *See* 18 Del. Code Ann. § 3346; § 3562.
[49] *See* GA Code §33-24-56.3.
[50] *See* Haw. Rev. Stat. § 431:10A-122.
[51] *See* 215 ILCS 5/356x.
[52] *See* Ind. Code §27-8-14.8-3.
[53] *See* La. Rev. Stat. Ann. §22:1029.
[54] *See* 24-A Me. Rev. Stat. Ann. § 2763; § 2847-N; § 4254.
[55] *See* Md. Code Ann., Ins. § 15-837.
[56] *See* Minn. Stat. Ann. § 62A.30.
[57] *See* Mo. Rev. Stat. §376.1250.
[58] *See* Neb. Rev. Stat. § 44-7,102.
[59] *See* N.J. Stat. Ann. 17B:26-2.1u; 17:48-6y;  17:48A-7x; 17:48E-35.23; 17B:27-46.1y; 17B:27A-7.7; 17B:27A-19.9; 26:2J-4.24.
[60]  *See* N.M. Stat Ann. § 59A-22-47; § 59A-23-7.6; § 59A-46-48; § 59A-47-43.
[61] *See* Nev. Rev. Stat. §689A-04042; 689B-0367; 695B-1907; 695C-1731; and 695G-168.
[62] *See* N.J. Stat. Ann. 17B:26-2.1u; 17:48-6y; 17:48A-7x; 17:48E-35.23; 17B:27-46.1y; 17B:27A-7.7; 17B:27A-19.9; 26:2J-4.24.
[63] *See* N.C. Gen. Stat. §58-3-179.
[64] *See* 36 Okla. Stat. §6060.8a.
[65] *See* Or. Rev. Stat § 743A.124.
[66] *See* 40 Pa. Stat. Ann.  § 764i.
[67] *See* R.I. Gen. Laws § 27-18-58;  § 27-19-49; § 27-41-60.
[68] *See* Tenn. Code Ann. § 56-7-2363.
[69]  *See* Tex. Ins. Code §1363.003 and Texas Department of Insurance Commissioner's Bulletin # B000609.
[70] *See* 8 Vt. Stat. Ann. § 4100g.
[71] *See* Va. Code Ann. § 38.2-3418.7:1.
[72] *See* Wash. Rev. Code 48.43.043

157.    Despite the Coverage Mandates, Humana has adopted, as set forth in the Flier, a policy of non-coverage for Cologuard® and, to date, denied or underpaid 1,207 Cologuard® claims totaling at least $596,712.62 in Coverage Mandate States other than Kentucky.

158.    In light of the Coverage Mandates, many of which Humana has publicly acknowledged, Humana should not be denying coverage for Cologuard® tests under any Humana Plan issued in the Coverage Mandate States.

159.    As a direct and proximate result of Humana's acts and omissions, including but not limited to Humana's failures to comply with the terms of the Plans, the Coverage Mandates, and other state and federal law, Exact has sustained and will continue to sustain in the future damages and has been deprived and will continue to be deprived in the future of the compensation to which it is entitled to receive for providing Cologuard®.

160.    The existence of another potentially adequate remedy does not preclude a judgment for declaratory relief.  Federal Rules of Civil Procedure Rule 57.

161.    Exact is entitled to declaratory relief pursuant to 28 U.S.C. §2201, including the payment of all money that was not paid to Exact by Humana for the providing Cologuard®.

## COUNT SIX
### (Breach of Contract - as Assignees)

162.    Plaintiff incorporates by reference all of the foregoing allegations as if set forth at length herein.

163.    To the extent that some of the Plans are not employee welfare benefit plans governed by ERISA, they are nonetheless valid and enforceable insurance contracts.

---

[73] *See* D.C. Code § 31-2931.
[74] *See* Wis. Stat. Ann. § 632.895 and Wis. Adm. Code § Ins 3.35.
[75] *See* Wyo. Stat. Ann. § 26-19-107.

164.    As set forth more fully above, upon information and belief, all of the Plans require reimbursement of medically necessary medical expenses incurred by Humana Subscribers at usual, customary, and reasonable rates.  Further, under the terms of the Plans, Humana Subscribers are entitled to coverage for the services that they received from Exact.

165.    By virtue of the AoBs provided by Humana Subscribers, Exact was assigned the right to receive reimbursement under the Plans for the services that it rendered to the Humana Subscribers.  Pursuant to said AoBs, Humana is, expressly or impliedly, contractually obligated to reimburse Exact for these services.

166.    Claiming various purported reasons for denying coverage, Humana failed to make payment of benefits to Exact in the manner and amounts required under the terms of the Plans, the Coverage mandates, and other applicable state and federal laws.

167.    Upon information and belief, the Plans did not prohibit the Humana Subscribers from assigning their rights to benefits under the Plans to Exact, including the right of direct payment of benefits under the Plans to Exact.

168.    Moreover, as set forth more fully above, to the extent that the Plans prohibited the assignment of benefits to Exact, Humana waived any purported anti-assignment provisions, have ratified the assignment of benefits to Exact, and/or is estopped from using any purported anti-assignment provisions against Exact due to its course of dealing with and statements to Exact, discussed more fully above.

169.    As set forth more fully above, to the extent that the Plans prohibited the assignment of benefits to Exact, any such purported anti-assignment prohibitions are unenforceable as, among other things, contrary to public policy, as adhesion contracts, and/or due to a lack of privity with Exact.

170.     As the result of Humana's failures to comply with the terms of the Plans, and/or any other applicable state common law, statutes, or regulations requiring timely payment of claims, Exact, as assignee, has suffered damages and lost benefits, for which it is entitled to damages from Humana, including unpaid benefits, restitution, interest, and other contractual damages sustained by Exact.

## COUNT SEVEN
### (Breach of Contract - As Third-Party Beneficiary)

171.     Plaintiff incorporates by reference all of the foregoing allegations as if set forth at length herein.

172.     To the extent the Humana Plans are not issued pursuant to an employee benefit plan, Humana's failure to pay for the medically necessary services provided by the Exact to Humana Subscribers described in this Complaint constitutes a breach of contract under applicable law.

173.     Exact is a third-party beneficiary under the Plans, as Humana intended to reimburse providers under the Plans for services provided to Humana Subscribers.

174.     Exact is a third-party beneficiary of the Humana Plans and is entitled to recover benefits due to the Humana Subscribers and enforce their rights under the Plans and policies.

175.     As the result of Humana's failures to comply with the terms of the Plans, and/or any other applicable state common law, statutes, or regulations requiring timely payment of claims, Exact, as a third-party beneficiary, has suffered damages and lost benefits, for which it is entitled to damages from Humana, including unpaid benefits, restitution, interest, and other contractual damages sustained by Exact.

## COUNT EIGHT
### (Breach of Fiduciary Duty – non-ERISA)

176.    Plaintiff incorporates by reference all of the foregoing allegations as if set forth at length herein.

177.    Under the Humana Plans, Humana is a fiduciary entrusted with the obligation to pay for medically necessary services, covered services, or covered benefits as defined by the Plans.  Humana further owes its Humana Subscribers a fiduciary duty and a duty to act in good faith and deal fairly.

178.    Humana breached and abused its fiduciary duties to its Humana Subscribers by denying payment of the claims for services provided to its insured arbitrarily and capriciously, in bad faith, and under false pretenses in order to maximize its profits.

179.    The Humana Subscribers described in this Complaint have assigned their rights to coverage under Humana Plans to Exact.

180.    As assignees of the Humana Subscribers of the Plans, Exact is entitled to recover benefits due to the Humana Subscribers and enforce the rights of Humana Subscribers under the terms of the Plans and policies.

181.    Humana violated its fiduciary duty of loyalty to Exact by, among other things, wrongfully denying claims for costs associated with Cologuard® tests in violation of the Plans, state and federal law, and under false pretenses; denying coverage based on a lack of preauthorization when the Plans require no such preauthorization as a condition to coverage; denying coverage in direct contradiction to Humana's Admission; refusing to allow Exact any opportunity to negotiate coverage beyond the unduly burdensome terms it has wrongfully

required in contravention of applicable law and Plan terms; and failing to inform Exact, as assignees of the Humana Subscribers, of material information.

182.     As the result of Humana's violations of its fiduciary duties to Exact, including, but not limited to, Humana's failures to comply with applicable state and federal common law, statutes, or regulations requiring timely payment of claims, Exact has suffered, and continues to suffer, substantial damages.

**COUNT NINE**
**(Breach of the Duty of Good Faith and Fair Dealing – non-ERISA)**

183.     Exact incorporates by reference all of the foregoing allegations as if set forth at length herein.

184.     As set forth more fully above, if any of the Plans are not employee welfare benefit plans governed by ERISA, they are nonetheless valid and enforceable insurance contracts.  As such, the Plans contain an implied duty of good faith and fair dealing.

185.     Humana, as the obligor under the Plans, owed the Humana Subscribers a duty of good faith and fair dealing with respect to said Plans.

186.     As set forth more fully above, the Humana Subscribers received healthcare services from Exact and provided AoBs in which they assigned to Exact their right to benefits under the Plans for the services that Exact provided to the Humana Subscribers.

187.     By virtue of these assignments, Humana also owe this duty of good faith and fair dealing to Exact.

188.     As set forth more fully above, upon information and belief, the Plans did not prohibit the Humana Subscribers from assigning their rights to benefits under the Plans to Exact, including the right of direct payment of benefits under the Plans to Exact.

189.    Moreover, to the extent that the Plans prohibited the assignment of benefits to Exact, Humana waived any purported anti-assignment provisions, have ratified the assignment of benefits to Exact, and/or is estopped from using any purported anti-assignment provisions against Exact due to its course of dealing with and statements to Exact.

190.    And to the extent that the Plans prohibited the assignment of benefits to Exact, any such purported anti-assignment prohibitions are unenforceable as, among other things, contrary to public policy, as adhesion contracts, and/or due to a lack of privity with Exact.

191.    Humana breached its duty of good faith and fair dealing owed to Exact, as assignee of rights and benefits under the Plans, in a number of ways, described more fully above, including wrongfully denying claims for costs associated with Cologuard® tests in violation of the Plans, state and federal law, and under false pretenses; denying coverage based on a lack of preauthorization when the Plans require no such preauthorization as a condition to coverage; denying coverage in direct contradiction to Humana's Admission; refusing to allow Exact any opportunity to negotiate coverage beyond the unduly burdensome terms it has wrongfully required in contravention of applicable law and Plan terms; and failing to inform Exact, as assignees of the Humana Subscribers, of material information.

192.    Humana's conduct in derogation of its duty of good faith and fair dealing under the Plans has deprived Exact of its reasonable expectations and benefits as assignee of benefits under the Plans.

### COUNT TEN
### (Insurance Bad Faith – non-ERISA)

193.    Exact incorporates by reference all of the foregoing allegations as if set forth at length herein.

194.    As set forth more fully above, if any of the Plans are not employee welfare benefit plans governed by ERISA, they are nonetheless valid and enforceable insurance contracts.  As such, the Plans contain an implied duty of good faith and fair dealing.

195.    Humana, as the obligor under the Plans, owed the Humana Subscribers a duty of good faith and fair dealing with respect to said Plans.

196.    As set forth more fully above, the Humana Subscribers received healthcare services from Exact and provided AoBs  in which they assigned to Exact their right to benefits under the Plans for the services that Exact provided to the Humana Subscribers.

197.    By virtue of these assignments, Humana is precluded from engaging in unfair claims settlement practices pursuant to Kentucky Revised Statutes ("KRS") §304.12-230 and similar statutes and/or common law in other states.

198.    Without limitation, Humana has engaged in insurance bad faith under KRS §304.12-230 and other laws by:  (1) Misrepresenting pertinent facts or insurance policy provisions relating to coverages at issue; (2) Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies; (3) Failing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies; (4) Refusing to pay claims without conducting a reasonable investigation based upon all available information; (5) Not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear; (6) Failing to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement; denying coverage in direct contradiction to Humana's Admission.

199.    As set forth more fully above, upon information and belief, the Plans did not prohibit the Humana Subscribers from assigning their rights to benefits under the Plans to Exact, including the right of direct payment of benefits under the Plans to Exact.

200.    Moreover, to the extent that the Plans prohibited the assignment of benefits to Exact, Humana waived any purported anti-assignment provisions, ratified the assignment of benefits to Exact, and/or is estopped from using any purported anti-assignment provisions against Exact due to its course of dealing with and statements to Exact as an out-of-network provider.

201.    And to the extent that the Plans prohibited the assignment of benefits to Exact, any such purported anti-assignment prohibitions are unenforceable as, among other things, contrary to public policy, as adhesion contracts, and/or due to a lack of privity with Exact.

202.    Humana has acted in bad faith in a number of ways, described more fully above, including wrongfully denying claims for costs associated with Cologuard® tests in violation of the Plans, state and federal law, and under false pretenses; denying coverage based on a lack of preauthorization when the Plans require no such preauthorization as a condition to coverage; denying coverage in direct contradiction to Humana's Admission; refusing to allow Exact any opportunity to negotiate coverage beyond the unduly burdensome terms it has wrongfully required in contravention of applicable law and Plan terms; and failing to inform Exact, as assignees of the Humana Subscribers, of material information.

203.    Humana's bad faith conduct under the Plans has deprived Exact of its reasonable expectations and benefits as assignee of benefits under the Plans.

## COUNT ELEVEN
### (Tortious Interference with Prospective Economic Advantage)

204.   Exact incorporates by reference all of the foregoing allegations as if set forth at length herein.

205.   As set forth more fully above, upon information and belief, Humana has sent the Flier directly to healthcare providers and/or otherwise misrepresented to such healthcare providers that Cologuard® is ineffective, unsafe, and not covered under Humana commercial plans.

206.   Upon information and belief, medical providers who received Humana's false information, by way of the Flier or otherwise, have ceased to prescribe Cologuard®.

207.   Exact had and has an economic relationship with these medical providers and Humana Subscribers.

208.   Humana has knowledge of the probability of future economic benefit to Exact by virtue of this economic relationship.

209.   Humana's misrepresentations were designed intentionally to disrupt Exact's relationship with Humana Subscribers.

210.   Exact's relationship with Humana Subscribers has been disrupted.

211.   Exact has suffered damages as a proximate cause of this disruption.

**COUNT TWELVE**
**(Quantum Meruit)**

212.   Exact incorporates by reference all of the foregoing allegations as if set forth at length herein.

213.   Exact has conferred upon Humana the benefit of providing treatment to Humana Subscribers.

214.     At the times Exact treated the Humana Subscribers, Exact reasonably expected remuneration from Humana in the form of its full billed charges minus any applicable patient responsibilities.

215.     By refusing to pay Exact for the treatment that Exact provided to Humana Subscribers, Humana has been unjustly enriched.

216.     As the result of Humana's unlawful, unjust, and wrongful acts, Exact suffered and continues to suffer damages, and it is owed restitution from Humana.

<u>**PRAYER FOR RELIEF**</u>

WHEREFORE, Exact demands judgment in its favor against Humana as follows:

A.     Declaring that Humana has breached the terms of the Plans and awarding damages for unpaid benefits, as well as awarding injunctive and declaratory relief to prevent Humana's continuing actions detailed herein that are unauthorized by the Plans;

B.     Declaring that Humana failed to provide a "full and fair review" under § 503 of ERISA, 29 U.S.C. § 1133, and applicable claims procedure regulations, and that "deemed exhaustion" under such regulations is in effect as a result of Humana's actions, as well as awarding injunctive, declaratory and other equitable relief to ensure compliance with ERISA and its claims procedure regulations;

C.     Declaring that Humana violated its fiduciary duties under § 404 of ERISA, 29 U.S.C. § 1106, and awarding injunctive, declaratory and other equitable relief to ensure compliance with ERISA;

D.     Declaring that Humana violated and continues to violate the Coverage Mandates, and awarding injunctive, declaratory and other equitable relief to ensure compliance with ERISA;

E.     Temporarily and permanently enjoining Humana from continuing to pursue their actions detailed herein, and ordering Humana to pay benefits in accordance with the terms of the Plans and applicable law;

F.     Awarding lost profits, contractual damages, and compensatory damages in such amounts as the proofs at trial shall show;

G.     Awarding exemplary damages for Humana's intentional and tortious conduct in such amounts as the proofs at trial will show;

H.     Awarding restitution for reimbursements improperly withheld by Humana;

I.      Declaring that Humana has violated the terms of the relevant Plans and/or policies of insurance covering the Humana Subscribers;

J.      Requiring Humana to make full payment on all previously denied charges relating to the Humana Subscribers;

K.     Requiring Humana to pay Exact the benefit amounts as required under the Plans;

L.     Awarding reasonable attorneys' fees, as provided by common law, federal or state statute, or equity, including Section 502(g) of ERISA, 29 U.S.C. § 1132(g);

M.    Awarding costs of suit;

N.     Awarding pre-judgment and post-judgment interest as provided by common law, federal or state statute or rule, or equity; and

O.     Awarding all other relief to which Plaintiffs are entitled.

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all issues so triable.

Dated:  June 20, 2016

41

Respectfully submitted,

By: */s/ Stanton L. Cave*
        Stanton L. Cave
Law Office of Stan Cave
P.O. Box 910457
Lexington, Kentucky 40591-0457
(859) 309-3000
(859) 309-3001 (fax)
stan.cave@stancavelaw.com

***Attorneys for Plaintiffs,***
***Exact Sciences Corporation and***
***Exact Sciences Laboratories, LLC***

*Of Counsel:*
Anthony P. La Rocco (admitted *pro hac vice*)
George P. Barbatsuly (admitted *pro hac vice*)
Robert F. Pawlowski (admitted *pro hac vice*)
**K&L GATES LLP**
One Newark Center, Tenth Floor
Newark, New Jersey 07102
(973) 848-4000
(973) 848-4001 (fax)